# CADWALADER

Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

**By ECF**
January 12, 2018

Hon. William H. Pauley III, United States District Judge
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

Re:     *Zohar CDO 2003-1 v. Patriarch Partners, LLC*, No. 17-cv-00307 (WHP)

Dear Judge Pauley:

We write as counsel for third-party defendants MBIA Insurance Corp. ("MBIA Corp.") and MBIA Inc. ("Inc." and together with MBIA Corp., "MBIA"). In accordance with the Court's individual rules, MBIA seeks leave to file a motion to dismiss all causes of action alleged against MBIA in the Third-Party Complaint.

As the Court is familiar from its Opinion and Order, dated December 29, 2017, this case involves three secured financing transactions known as the "Zohar CLOs." MBIA Corp. guaranteed the principal and interest payments owed by Zohar I and II (but not Zohar III) at maturity to certain senior classes of notes issued by those CLOs. As guarantor, MBIA Corp. is a secured party with rights to repayment for the over $900 million it paid upon the Zohar I and II defaults. MBIA Corp.'s rights and obligations are set forth in a series of contracts governing each Zohar CLO, including insurance agreements, insurance policies, management agreements (which also governed Defendants' rights and obligations as the Zohar CLOs' collateral managers) and trust indentures. The indentures provide liens that secure MBIA Corp.'s and the other secured parties' rights to repayment from loan and equity collateral owned by the Zohar CLOs. Inc.'s only connections to the Zohar CLOs was as a holder of Zohar I and II notes and as the parent company of MBIA Corp.

As a preliminary matter, the Third-Party Complaint improperly asserts causes of action that are duplicative of or relate to claims already asserted in pending state court actions. *Ferolito v. Menashi*, 918 F. Supp. 2d 136 (S.D.N.Y. 2013) (federal court may avoid piecemeal litigation through *Colorado River* abstention when parallel state court proceeding involves similar or overlapping claims based on "the exact same scheme" alleged against defendants). The Court should therefore abstain from hearing Defendants' claims.

For the following additional reasons (among others), all of the claims against MBIA should be dismissed for failure to state a claim:

1.      In Count 5, Defendants allege that MBIA Corp. (designated by the indentures as the "Controlling Party" of Zohar I and II) owes Lynn Tilton (owner of entities that hold preference

CADWALADER

shares of Zohar I and II) a fiduciary duty "just as controlling stockholders of a corporation owe fiduciary duties to minority stockholders." According to Defendants, MBIA Corp. breached this alleged fiduciary duty by directing the Zohar CLOs' current collateral manager ("Alvarez") to take certain actions. This claim fails because MBIA Corp. is not a controlling stockholder, but rather a secured creditor[1], and under New York law, a creditor owes no fiduciary duties to its debtor (*SNS Bank N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 354 (N.Y. App. Div. 1st Dep't 2004); *see also Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012) ("there is generally no fiduciary obligation in a contractual arm's length relationship between a debtor and a note-holding creditor") nor any fiduciary duty to the debtor's equity holders. *Apace Commcs., Ltd. v. Burke*, 17 F. Supp. 3d 238, 244 (W.D.N.Y. 2014). The scope of the parties' business relationship is contractual and the contracts impose no fiduciary duty on MBIA Corp. *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19-20 ("where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship" and "[i]f the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of [a fiduciary] relationship"). Indeed, the indentures expressly exculpate MBIA Corp. from any obligation or duty to Defendants or any other persons in the exercise of its contractual rights and provides that MBIA Corp. "shall not be liable to any Person for any action taken by it or at its direction." Indenture § 13.2(a). Defendants' stockholder analogy further fails because Defendants' interests in the Zohar CLOs are not ordinary equity interests, but rather preference shares that have only limited contractual rights to receive cash residual payments following a liquidation of the Zohar CLOs' collateral.

2.      In Counts 1-3, Defendants assert claims for fraud, negligent misrepresentation and promissory estoppel, alleging that MBIA induced Defendants to resign as collateral manager of the Zohar CLOs with a promise that Defendants could continue to exercise control over the Zohar CLOs' portfolio companies. MBIA's alleged statements are not actionable because they are alleged to have been made in connection with expressly non-binding settlement proposals. *Arag-A Ltd. v. Argentina*, 178 F. Supp. 3d 192, 199-203 (S.D.N.Y. 2016). Further, Defendants could not have reasonably relied on MBIA's alleged statements as a matter of law, because Defendants *rejected* those proposals and then sought to retain control over the portfolio companies through the filing of an involuntary bankruptcy petition against Zohar I, which MBIA Corp. vigorously opposed. Further, at the time they allegedly relied on MBIA's promises, Defendants already had sued MBIA for fraud, alleging similar false promises in connection with the Zohar CLOs.[2]

3.      In Counts 6-10, 12 and 13, Defendants assert claims challenging the commercial reasonableness of the December 2016 auction of the Zohar I collateral. Certain of Defendants filed

---

[1] The indentures' "Controlling Party" designation does not confer on MBIA Corp. operational control over the Zohar CLOs. The "Controlling Party" designation merely grants limited contractual remedies to MBIA Corp. as a guarantor and a senior secured creditor.

[2] Count 2 also fails because MBIA and Patriarch lack the "confidential or fiduciary" relationship a negligent misrepresentation claim requires. *River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 275 (N.Y. App. Div. 1st Dep't 2002).

CADWALADER

suit in 2016 seeking to enjoin the auction as not commercially reasonable. The Trustee modified the terms of the auction to address nearly all of Defendants' objections. Defendants' two remaining objections were litigated: (1) the timing of the auction and (2) whether the auction could include a "catch-all" item offering for sale any remaining rights, title and interests in assets owned by Zohar I. Following an evidentiary hearing, Judge Rakoff issued an order that denied Defendants' preliminary injunction motion, set the date the auction would occur and permitted that the auction to include the "catch-all" item because it set forth the exact language in the indenture's definition of "Collateral" and in the granting clauses for the Trustee's lien on the Collateral. Under the Uniform Commercial Code, a sale as ordered by a Court is per se commercially reasonable. McKinney's UCC § 9-627(c)(1); *Nat'l Westminster Bank, USA v. Ross*, 130 B.R. 656, 677 (S.D.N.Y. 1991) (same). Thus, Defendants fail to state a claim on any of these counts because the Trustee conducted the auction in a commercially reasonable manner, in accordance with Defendants' demands and, to the extent any disputes remained, in accordance with the Court's order. In addition, Count 6, for breach of the Zohar I indenture, should be dismissed as barred by Section 5.8 (requiring prior notice and consent of MBIA Corp. as Controlling Party before a noteholder may file suit).

4.      In Count 17, Defendants contend that MBIA tortiously interfered with the indentures and management agreements by causing Alvarez, as collateral manager, to breach those agreements. Defendants' claim is deficient because, *inter alia*, MBIA Corp. is a party to the indenture and an express third-party beneficiary of the management agreement. *See Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) ("a plaintiff bringing a tortious interference claim must show that the defendants were not parties to the contract"); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 405-06 (S.D.N.Y. 2009) (no tortious interference "[w]here the defendants have an economic interest in the contract," unless defendant also acted "maliciously, fraudulently, or illegally"). In addition, MBIA's alleged acts were not tortious because they were expressly authorized by the indentures.

5.      In Counts 21-22, Defendants seek declarations regarding the validity of purportedly irrevocable proxies and LLC agreement amendments executed by Defendants in the name of the Zohar CLOs and the beneficial ownership of equity interests in the Zohar portfolio companies. These claims should be stayed pursuant to the *Colorado River* doctrine because they present issues that have been decided by or are currently pending in front of the Delaware Court of Chancery.

6.      In Count 20, Defendants contends that MBIA aided and abetted breaches of fiduciary duties allegedly owed to Defendants by certain other defendants. This claim is deficient for many of the same reasons addressed above, including vagueness, the absence of fiduciary duties alleged to exist and because MBIA's actions were authorized by the parties' agreements.

MBIA reserves all rights and remedies, including the right to assert additional arguments not addressed herein such as arguments concerning jurisdictional and procedural defects in the Third-Party Complaint.

# C A D W A L A D E R

Very truly yours,

Jonathan M. Hoff

cc: Counsel of Record