# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

January 19, 2018

<u>VIA ECF</u>

Hon. William H. Pauley III
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re: *Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, No. 17-cv-00307 (S.D.N.Y.)—
Defendants' Response to Pre-Motion Letters

Dear Judge Pauley:

I write as counsel for Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs to respond briefly to the letters of January 12 filed by Plaintiffs (the "Funds") and Third-Party Defendants (Dkts. 108–110, 115), which seek leave to file motions to dismiss Defendants' Counterclaims and Third-Party Complaint (Dkt. 88). While Defendants do not believe the motions will have merit, we do not object to their being filed. Defendants do, however, ask that the Court defer deciding the issues raised in the letters until the motions to dismiss are fully briefed, and that it permit the parties to appear before the Court to argue the motions.

Because the arguments made in the various pre-motion letters are largely duplicative, we respond here to all four letters (and ask the Court's leave in filing this single letter of five pages, in place of four separate responses, each up to three pages in length).

As a preliminary matter, each of the letters adopts this Court's "initial observations," Dkt. 105 at 35—reached without the benefit of briefing from the parties—regarding jurisdiction and impleader. We respectfully submit that, contrary to the letters' contentions, this Court must retain jurisdiction over Defendants' counterclaims and third-party claims, and that the third-party claims, which are in part derivative of the Funds' affirmative claims, qualify as an impleader action under Federal Rule of Civil Procedure 14. In the accompanying memorandum of law, we provide a more complete response to these arguments, and respond to the questions posed by this Court in its decision dismissing Plaintiffs' affirmative claims.

In addition, the letters make a number of arguments suggesting that the counterclaims and third-party claims do not sufficiently state a claim. We respond briefly to each in turn.

*First*, the parties argue that the counterclaims and third-party claims fail to state a claim because no fiduciary relationship exists between the parties and Defendants. Dkts. 108 at 2–3, 110 at 2–3, 115 at 1–2. They contend that, as mere creditors, they have no duties to the preference shareholder of the Funds. *Id.* This categorical approach ignores the "facts of [the] particular relationship," on which the "existence of [] a fiduciary relationship depends,"

January 19, 2018
Page 2

*Better Benefits, Inc. v. Protective Life Ins. Co.*, 2004 WL 633730, at *3 (S.D.N.Y. Mar. 30, 2004), and the law, which makes clear that creditors may owe fiduciary duties, *see, e.g.*, *In re KDI Holdings, Inc.*, 277 B.R. 493, 516–17 (Bankr. S.D.N.Y. 1999).

A fiduciary duty exists, *inter alia*, "when one assumes control and responsibility over another." *Ross v. FSG PrivatAir Inc.*, 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004) (quotation marks and citations omitted).  Ms. Tilton occupies multiple positions in relation to the Third-Party Defendants—including as the Funds' owner, preference shareholder, and director, the holder of the Class A-1 and B Notes for Zohar I, and the owner, CEO, and director of various portfolio companies—that place them in positions of control and responsibility towards her.  The Funds and AMZM concede that the Trustee (U.S. Bank) "might have owed [Defendants] a fiduciary duty," Dkt. 110 at 3 (emphasis removed)—and U.S. Bank tellingly does not argue otherwise. *See also* Zohar II Indenture § 6.17 (Trustee owes fiduciary duties).  AMZM, as collateral manager, also owes a duty of care to the Funds' owner and noteholders.  ¶ 201.[1]  And MBIA and the Zohar III Controlling Class are effectively controlling the Funds.  ¶ 121.  For example, through their control of AMZM, they effectively manage the Funds, direct the Trustee (U.S. Bank), and oversee and direct the Funds' litigation strategy.  These are not the powers of a mere creditor.  MBIA's contention that the "Controlling Party" designation "does not confer on [it] operational control over the Zohar CLOs," Dkt. 115 at 2, is not true—certainly not after the Zohar I and II defaults, with MBIA directing AMZM in all aspects of the Funds' operations.  Through the parties' longstanding relationship, moreover, MBIA gained and abused Defendants' "trust and confidence," a hallmark of a fiduciary breach.  ¶¶ 179, 189–90.

The letters, viewed as a whole, suggest that no one owes any fiduciary duty to Defendants, even though Ms. Tilton is both a noteholder and the ultimate owner of the Funds, among other roles.  If this were true, Plaintiffs and Third-Party Defendants would be free to ignore Defendants' interests and raid the Funds for their own benefit, essentially stealing Ms. Tilton's money while leaving her and the other Defendants with no recourse.  Indeed, Defendants allege that Plaintiffs and Third-Party Defendants are already doing so, looting the Funds' coffers to finance their suits against Ms. Tilton and her Patriarch affiliates.

*Second*, Plaintiffs and Third-Party Defendants assert that the Indentures preclude suit by barring various claims.  Dkts. 108 at 3, 110 at 3, 115 at 2.  The Zohar III Controlling Class, for instance, asserts that § 13.2 of the Zohar III Indenture "precludes the imposition of liability upon [them] based upon any action or direction given." Dkt. 108 at 3.  However, § 13.2 speaks only to the exercise of rights "as Noteholders," not as a Controlling Class.  MBIA similarly points to § 13.2(a) of the Zohar I and II Indentures in claiming that the Indentures "expressly exculpate" it.  Dkt. 115 at 2.  But that provision applies only "so long as no Credit Enhancement Event has occurred"; the default of Zohar I and II triggered a

---

[1]  Citations to "¶ __" are to Defendants' Answer, Counterclaims, and Third-Party Complaint (Dkt. 88).

**GIBSON DUNN**

January 19, 2018
Page 3

Credit Enhancement Event. Section 5.8 of the Indentures, which both the Funds and MBIA identify as precluding suit absent prior notice, Dkts. 110 at 3, 115 at 3, speaks only to "Holders of Notes," which most Defendants are not (and no Defendants hold Zohar II or Zohar III notes). Nor did the Funds have any qualms about filing suit alleging breaches of the Indentures, without providing notice.[2] That provision also does not bar suits for fraud, tortious interference, and other intentional misconduct. Nor could it. Parties may not contract away their right to bring fraud or intentional tort claims. *Turkish v. Kasenetz,* 27 F.3d 23, 27-28 (2d Cir. 1994) ("parties cannot use contractual . . . clauses to shield themselves from liability for their own fraudulent conduct"); *Kalisch-Jarcho, Inc. v. City of New York*, 448 N.E.2d 413, 416–17 (N.Y. 1983).[3]

Furthermore, to the extent MBIA asserts that it cannot tortiously interfere with a contract it is party to, Dkt. 115 at 3, this is also incorrect both because the Indentures are multilateral contracts and because MBIA engaged in fraudulent conduct. *See, e.g.*, *Rosecliff, Inc. v. C3, Inc.*, 1995 WL 276156, at *3 (S.D.N.Y. May 10, 1995) ("When a contract involves at least three parties, a claim for tortious interference can be maintained against a tortfeasor who is a party to the contract."); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406 (S.D.N.Y. 2009) (noting that a party with an economic interest in a contract may still tortiously interfere with the contract if the conduct is malicious, fraudulent, or illegal).

*Third*, Third-Party Defendants contend that the Auction of the Zohar I Collateral was per se reasonable because it was overseen by a court. Dkts. 108 at 3, 109 at 3, 115 at 3. This ignores the actual decision and order issued by Judge Rakoff, which only addressed the likelihood of success of limited claims in the context of a preliminary injunction. *See Patriarch Partners XV, LLC v. U.S. Bank Nat'l Ass'n*, 2017 WL 3822603, at *6-7 (S.D.N.Y.

---

[2] The Funds and AMZM also assert that Defendants cannot sue AMZM for breaches of the AMZM Collateral Management Agreements ("AMZM CMAs") and the Indentures because Defendants are not third-party beneficiaries identified in the Indentures. Dkt. 110 at 3. In fact, each of the Indentures specifically identifies the "Collateral Manager" and "Noteholders" as beneficiaries, *see* Zohar I & II Indentures § 18.8, Zohar III Indenture § 17.8—roles that relevant Defendants here satisfy. Moreover, the AMZM CMAs, which Defendants allege were independently breached, *see, e.g.*, Count XIV (¶¶ 276–287) contain no such limitation, and the Funds and AMZM do not contest Defendants' status as beneficiaries of those contracts.

[3] The Zohar III Controlling Class also mischaracterizes the holding of an earlier books and records action between Ms. Tilton and the Funds in claiming that AMZM's failure to provide monthly reports since it became collateral manager was "caused by the Tilton Defendants." Dkt. 108 at 3 & n.6. While the Delaware Court of Chancery held that the Tilton Defendants had failed to provide all required books and records, it did not reach any conclusion about whether this information was necessary to prepare monthly reports—it is not—and the Tilton Defendants have long since materially complied with their obligations in that regard. AMZM has no justification for failing to provide noteholders, including Ms. Tilton, with the monthly reports that are required under the Funds' Indentures, and for investing its energies and the Funds' funds in baseless and costly litigation at MBIA's and the Zohar III Controlling Class' direction, instead of managing the collateral of the Funds for the benefit of all noteholders. *See, e.g.*, ¶¶ 126, 139–142.

GIBSON DUNN

January 19, 2018
Page 4

Aug. 28, 2017) ("Plaintiffs . . . did not show a likelihood of success on the merits . . . [A]ccordingly the Court allowed the Auction to proceed . . . [and] denied plaintiffs' motion for a preliminary injunction."). U.S. Bank's contention that Judge Rakoff "held" that the sale was appropriate, Dkt. 109 at 3, treats his likelihood of success finding on a preliminary injunction as if it was a finding on the merits with precedential value, contrary to established law. *See, e.g.*, *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits").[4] The clearest evidence that Judge Rakoff's ruling was not dispositive of the ultimate merits of Defendants' claims is the fact that, when Defendants sought to amend their complaint to add claims for money damages, MBIA and U.S. Bank opposed—not on the grounds that the issues had already been decided, but because allowing Defendants to amend their complaint to assert claims seeking damages would "raise new . . . issues" and "result in an entirely new litigation." *Patriarch Partners XV, LLC v. U.S. Bank Nat'l Ass'n*, No. 1:16-cv-07128, Dkt. 85 at 2 (MBIA Letter); *accord id.*, Dkt. 84 at 2 (U.S. Bank Letter) (opposing leave to amend because Defendants were seeking to expand the case "from one seeking exclusively injunctive relief to one seeking damages"). Indeed, after the completion of the auction and the denial of leave to amend, the parties stipulated to the dismissal of the case *without prejudice*—meaning that they agreed, contrary to their position here, that Defendants would retain the right to pursue their claims relating to the auction elsewhere. *See id.*, Dkt. 87 (stipulation & order dismissing case).

*Fourth*, MBIA claims that Defendants could not have relied on their misrepresentations because such statements were made during settlement negotiations and rejected, and because Defendants earlier sued MBIA for fraud in a separate proceeding. Dkt. 115 at 2. But the Third-Party Complaint alleges misrepresentations memorialized *on the record* in bankruptcy proceedings and in other documents, not during "settlement" talks. ¶¶ 120–21, 182, 184. Nor does an earlier fraud allegation in a different context preclude reliance in this context. In any case, the reasonableness of reliance is a highly fact-specific issue inappropriate for pre-trial disposition. *Brunetti v. Musallam*, 11 A.D.3d 280, 281 (1st Dep't 2004).

*Fifth*, Third-Party Defendants raise a host of other objections, none of which warrant dismissal. Multiple parties assert that the aiding and abetting claims should be rejected, Dkts. 108 at 3, 110 at 3, 115 at 3, but, as previously explained, the underlying fiduciary duties do exist and the transaction documents themselves do not bar such claims. U.S. Bank asserts that the accounting and aiding and abetting breach claims against it are "mere conclusions, plead [sic] without any factual support," Dkt. 109 at 3, ignoring the detailed allegations supporting those claims, *e.g.*, ¶¶ 159, 291–92, 327. U.S. Bank's naked assertion that it has "provided Patriarch with extensive" documents, such that there is "no actual controversy between the parties" regarding its refusal to permit a full inspection of its

---

[4] The preliminary injunction opinion was also issued seven months after the parties stipulated to dismissal on mootness grounds, removing jurisdiction from the district court and rendering the opinion advisory.

**GIBSON DUNN**

January 19, 2018
Page 5

expenditures and accounts for the Zohar Funds, Dkt. 109 at 3, cannot overcome the contrary allegations in the well-pleaded complaint.

*Finally*, while the Funds and AMZM acknowledge that Defendants' declaratory claims concerning beneficial ownership "state a cognizable claim," various parties ask this Court to stay those claims in light of pending Delaware state court actions.  Dkts. 110 at 3, 115 at 3.  But Defendants' "beneficial ownership claims" are *not* "currently pending before the Delaware Court of Chancery," contrary to Defendants' and various third-parties' assertions.  Dkt. 110 at 3; *see also* Dkts. 108 at 3, 115 at 3.[5]  In any case, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The justifications identified by the Supreme Court for a stay, which only apply in "exceptional" circumstances, strongly favor this case being litigated here or in the separate state court actions filed by Defendants before Plaintiffs recently filed suit in Delaware.  These earlier-filed forums are by far the more appropriate alternatives; indeed, not all parties necessary to this dispute are subject to jurisdiction in Delaware, and none of the parties, witnesses, or documents are located there.  And the Funds are the party that originally presented the ownership claims to this Court.  This is, moreover, the only forum where Defendants' counterclaims and third-party claims can be resolved in one proceeding.  *See id.* at 818–819 (identifying relevant factors as the "inconvenience of the federal forum," "the desirability of avoiding piecemeal litigation," and "the order in which jurisdiction was obtained").

The many misstatements and mischaracterizations made by the Funds and Third-Party Defendants cannot be fully addressed in a brief letter to this Court, but Defendants hope that this letter corrects some of the more egregious inaccuracies peddled by those parties.  We would appreciate the opportunity to provide a more complete response through full briefing on a motion to dismiss.  As always, we appreciate Your Honor's careful consideration.

Respectfully,

 */s/ Randy M. Mastro*

Randy M. Mastro

cc: Counsel of Record

---

[5] The court has issued final judgment with respect to all ownership claims and counterclaims asserted in the November 2016 Delaware action concerning three portfolio companies.  *See Zohar II 2005-1 Ltd., v. FSAR Holdings, Inc.*, 2017 WL 6761234, at *2 (Del. Ch. Dec. 29, 2017) (entering "final judgment now on Counts I, II and III of the Complaint and Count I of Defendant Tilton's Counterclaim").  That judgment has been stayed pending appeal because the very judge who issued the decision found that Ms. Tilton's appeal presents "serious" and "novel" legal questions "worthy of consideration by [the Delaware] Supreme Court." *Id.* at *1.  The other actions recently filed by the Funds in the Court of Chancery—including yet another duplicative suit filed this past Friday—have been removed to the District of Delaware.