# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

September 10, 2018

<u>VIA ECF</u>

Hon. William J. Pauley III
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re:   <u>*Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, No. 17-cv-00307 (S.D.N.Y.)–
      Status Update</u>

Dear Judge Pauley:

I write as counsel for Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs in the above-captioned matter (the "Patriarch Entities"), with the consent of all parties in the case,[1] to provide the joint status report requested by Your Honor in the telephone conference with the parties of June 26, 2018.[2] As the Court is aware, on March 11, 2018, the Plaintiffs/Counterclaim Defendants in this proceeding—Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited, and Zohar III, Limited (collectively, the "Zohar Funds")—commenced voluntary Chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which automatically stayed this action. *See* Dkt. 130 (Joint Status Report). These Chapter 11 cases are pending under the jointly administered case number, 18-10512 (CSS).

As the Court is also aware, on May 21, 2018, the Bankruptcy Court entered an order (the "Settlement Order") approving a settlement agreement (the "Settlement Agreement") by and between, among others, the parties to this litigation proceeding, other than Third-Party Defendants U.S. Bank and Alvarez & Marsal Management LLC ("AMZM"). *See* Dkt. 130, Ex. A (Settlement Order) & Ex. 1 to Ex. A (Settlement Agreement).[3] By and as a result of

---

[1] Third-Party Defendant U.S. Bank National Association, acting solely in its capacity as Trustee for the Zohar Funds ("U.S. Bank") takes no position on the substantive updates in this report. All other parties join in the content of this joint status report, except as otherwise noted throughout.

[2] Nothing herein shall be deemed a waiver or modification of any rights or the effect of the automatic stay under Bankruptcy Code section 362, or under the Settlement Order and Settlement Agreement (as defined herein).

[3] Pursuant to and subject to the terms of the Settlement Order and Settlement Agreement, AMZM shall be terminated as collateral manager for Plaintiffs and Counterclaim Defendants Zohar Funds.

September 10, 2018
Page 2

the Settlement Order and the Settlement Agreement, the parties agreed to a stay of litigation (including this proceeding) for a period of 15 months, which may be extended to 18 months under certain circumstances. Settlement Agreement ¶ 15. As a result, this proceeding is stayed at least until August 2019.

On the telephone conference of June 26, Your Honor asked the parties for their position on administrative closure of this action, in light of the bankruptcy stay. Recognizing the Court's preference for administrative closure of the case, certain of the parties have negotiated tolling agreements. Specifically, the parties to the Settlement Agreement, U.S. Bank, and MBIA, Inc. (who together constitute all of the parties to this action other than three Third-Party Defendants) have agreed to the final form of, and are in the process of executing, a master tolling agreement that covers this action, and two of the three remaining Third-Party Defendants have agreed in principle to execute separate tolling arrangements. The Patriarch Entities and AMZM are continuing to have discussions regarding a potential tolling agreement with AMZM. We will advise the Court as to the status of those discussions on the telephonic status conference next week.

The non-AMZM parties do not oppose administrative closure so long as any and all deadlines and statutes of limitations are tolled as to all parties to the litigation during the pendency of the administrative closure. *Cf. Kuzinski v. Schering Corp.*, 614 F. Supp. 2d 247, 251–52 (D. Conn. 2009) (administratively closing case "[i]n light of [the parties'] tolling agreement"). My clients' position in particular is that administrative closure would prejudice their rights in the absence of a tolling agreement with AMZM (which at present the parties have not entered into). AMZM does not oppose administrative closure of the case, and will not argue that any putative claims have lapsed solely as a result of administrative closure, but does not agree to any separate extension of deadlines or tolling of any statute of limitations.

In accordance with the Court's instructions on the June 26 telephone conference, the parties will call the Court on September 14 at 11 a.m. for a telephonic status conference. The parties are happy to provide any further information that would be helpful to Your Honor.[4]

---

[4] In addition, the parties other than AMZM respectfully request that any administrative closure order expressly state: (a) that if the case is reopened, the timeliness of any pleadings that have already been filed in the case (*i.e.*, the complaint, counterclaims, and third-party claims), will be based upon the original filing date of such pleadings, *see Burroughs v. Petrone*, 2016 WL 5376371, at *4 (N.D.N.Y. July 15, 2016) (noting similar language in administrative closure order), *report and recommendation adopted*, 2016 WL 5374126 (N.D.N.Y. Sept. 26, 2016); (b) that, pursuant to their respective tolling agreements, the tolling period commenced as of the date the Bankruptcy Court approved the Settlement Agreement; and (c) that if the case is reopened, it will be assigned to Your Honor. AMZM notes that it is not a party to any tolling agreement that purportedly commenced as of the date the Bankruptcy Court approved the Settlement Agreement and subsection (b) of the prior sentence therefore has no application to AMZM.

GIBSON DUNN

September 10, 2018
Page 3

Respectfully,

   */s/ Randy M. Mastro*

Randy M. Mastro

Cc: Counsel of Record