UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

ZOHAR CDO 2003-1, LTD.; ZOHAR II
2005-1, LTD.; and ZOHAR III, LTD.,

       *Plaintiffs & Counterclaim
       Defendants*

       v.

PATRIARCH PARTNERS, LLC;
PATRIARCH PARTNERS VIII, LLC;
PATRIARCH PARTNERS XIV, LLC;
PATRIARCH PARTNERS XV, LLC;
OCTALUNA LLC; OCTALUNA II LLC;
OCTALUNA III LLC; ARK II CLO 2001-1,
LLC; ARK INVESTMENT PARTNERS II,
L.P.; and LYNN TILTON,

       *Defendants, Counterclaimants
       & Third-Party Plaintiffs*

       v.

MBIA INSURANCE CORPORATION;
MBIA, INC.; ALVAREZ & MARSAL
ZOHAR MANAGEMENT, LLC; U.S. BANK,
N.A.; CREDIT VALUE PARTNERS, LP,
HALCYON CAPITAL MANAGEMENT LP,
COÖPERATIEVE RABOBANK U.A., AND
VÄRDE PARTNERS, INC.

       *Third-Party Defendants*

No. 1:17-cv-00307

---------------------------------------------------------x

## PATRIARCH'S MEMORANDUM OF LAW IN OPPOSITION TO ZOHAR FUND'S MOTION TO TRANSFER VENUE

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Defendants, Counterclaimants,
and Third-Party Plaintiffs*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .............................................................................................................. 3

ARGUMENT ................................................................................................................... 7

I. The Motion To Transfer Venue Should Be Denied As Moot. ................................... 7

II. Transfer Is Not Permitted Under Either Statute Relied Upon By Debtors. ............ 8

      A.     This Action Does Not Arise "Under Title 11" (28 U.S.C. § 1412) ..................... 8

      B.     This Action Could Not "Have Been Brought" In Delaware (28 U.S.C.
            § 1404) ....................................................................................................... 9

III. Transfer Is Unavailable Even Under Debtors' Overbroad Reading Of § 1412 Because
    The Causes Of Action Being Litigated Are Not "Core." ................................ 12

      A.     Patriarch's Claims Are Not "Core" Proceedings. .................................. 12

      B.     Certain Claims' Supposed Relationships To Debtors' Estate Are
            Irrelevant. ................................................................................................. 15

      C.     Possible Impact On Estate Administration Cannot Render This Action
            Core. ......................................................................................................... 17

IV. Even If Transfer Were Permitted, This Case Should Remain In New York. ........ 18

      A.     The Parties' Private Interests Favor Retaining This Action In New York. ......... 19

      B.     The Public Interest Favors Retaining This Action In New York. ....................... 20

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page

**Cases**

*In re 610 W. 142 Owners Corp.*,
    219 B.R. 363 (Bankr. S.D.N.Y. 1998).......................................................................12

*In re AOG Entm't, Inc.*,
    569 B.R. 563 (Bankr. S.D.N.Y. 2017).......................................................................18

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013)....................................................................................2, 19, 20, 23

*Baier v. Upper N.Y. Inv. Co. LLC*,
    No. 6896, 2018 WL 1791996 (Del. Ch. Apr. 16, 2018) ..........................................10

*Berman v. Informix Corp.*,
    30 F. Supp. 2d 653 (S.D.N.Y. 1998)...................................................................19, 20

*Bockman v. First Am. Mktg. Corp.*,
    459 F. App'x 157 (3d Cir. 2012) ..............................................................................11

*In re CBI Holding Co., Inc.*
    529 F.3d 432 (2d Cir. 2008)......................................................................................14

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994)........................................................................................11

*In re Coudert Bros.*,
    No. 11 Civ. 4949, 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ...........................22

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'Ship I*,
    No. 15 Civ. 3474, 2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015)......................12, 24

*In re Deflora Lake Dev. Assoc., Inc.*,
    571 B.R. 587 (Bankr. S.D.N.Y. 2017).......................................................................15

*Del. Trust Co. v. Wilmington Trust, N.A.*,
    534 B.R. 500 (S.D.N.Y. 2015)..................................................................................24

*DeWitt Rehabilitation & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
    464 B.R. 587 (S.D.N.Y. 2012)......................................................................12, 15, 22

*Document Techs., Inc. v. West*,
    No. 17 Civ. 2405, 2017 WL 1743938 (S.D.N.Y. Apr. 24, 2017)...........................25

*In re EMS Fin. Servs., LLC*,
    491 B.R. 196 (E.D.N.Y. 2013) .................................................................................22

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Exide Techs.*,
    544 F.3d 196 (3d Cir. 2008)...................................................................................13, 14

*Fed. Ins. Co. v. Sheldon*,
    150 B.R. 314 (S.D.N.Y. 1993).......................................................................................7

*Foremost Guar. Corp. v. Pub. Equities Corp.*,
    No. 86 Civ. 6421, 1988 WL 125667 (S.D.N.Y. Nov. 10, 1988) ...............................8

*In re GM Crocetti*,
    No. 08 Civ. 6239, 2008 WL 4601278 (S.D.N.Y. 2008) .....................................14, 25

*In re Granite Partners*,
    210 B.R. 508 (Bankr. S.D.N.Y. 1997).........................................................................25

*Gruss Global Inv. Master Fund, Ltd. v. Deutsche Bank Trust Co. Ams.*,
    No. 09 Civ. 9723, 2010 WL 11688547 (S.D.N.Y. July 23, 2010) ..............13, 16, 17

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)..........................................................................................12

*Hartsel v. Vanguard Grp., Inc.*,
    No. 5394, 2011 WL 2421003 (Del. Ch. June 15, 2011) ...........................................10

*Hoffman v. Blaski*,
    363 U.S. 335 (1960).........................................................................................................9

*ICICI Bank Ltd. v. Essar Global Fund Ltd.*,
    565 B.R. 241 (S.D.N.Y. 2017)............................................................13, 18, 19, 22

*In re Kirwan Offices S.a.r.L.*,
    592 B.R. 489 (S.D.N.Y. 2018).............................................................................14, 15

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
    Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991) ..................................10

*In re Leiba*,
    529 B.R. 501 (Bankr. E.D.N.Y. 2015)...........................................................................7

*Martilet Mgmt. Serv. Inc. v. Bailey*,
    No. 12 Civ. 6691, 2013 WL 5420966 (S.D.N.Y. Sept. 27, 2013)..............................8

*Melgadejo v. S & D Fruits & Vegetables Inc.*,
    No. 12 Civ. 6852, 2013 WL 6334581 (S.D.N.Y. Dec. 5, 2013).................................8

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Multibank, Inc. v. Access Global Capital LLC*,
    594 B.R. 618 (Bankr. S.D.N.Y. 2018)......................................................................8, 9, 13

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010)........................................................................................9, 21

*In re New Century Holdings, Inc.*,
    387 B.R. 95 (Bankr. D. Del. 2008) ..................................................................................15

*In re Nw. Airlines Corp.*,
    384 B.R. 51 (S.D.N.Y. 2008)...........................................................................................25

*Oil & Gas Mgmt., Inc. v. Burnett Oil Co., Inc.*,
    No. 12 Civ. 1279, 2013 WL 171855 (W.D. Pa. Jan. 16, 2013).........................................7

*Onewoo Corp. v. Hampshire Brands, Inc.*,
    566 B.R. 136 (Bankr. S.D.N.Y. 2017)...................................................................9, 11, 13

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993)..............................................................................................14

*Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd.*,
    No. 16 Civ. 4488 (S.D.N.Y.) .............................................................................................6

*In re Petrie Retail, Inc.*,
    304 F.3d 223 (2d Cir. 2002).............................................................................................14

*Pub. Serv. Mut. Ins. Co. v. Goldfarb*,
    53 N.Y.2d 392 (1981) ......................................................................................................18

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003).............................................................................................16

*ResCap Liquidating Trust v. PHH Mortg. Corp.*,
    518 B.R. 259 (S.D.N.Y. 2014)...................................................................................15, 25

*In re Robert Plan Corp.*,
    777 F.3d 594 (2d Cir. 2015).......................................................................................12, 17

*Rush v. Savchuk*,
    444 U.S. 320 (1980)...........................................................................................................9

*Seafood Imports, Inc. v. A.J. Cunningham Packing Corp.*,
    405 F. Supp. 5 (S.D.N.Y. 1975)........................................................................................8

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Smolen v. Brauer*,
    177 F. Supp. 3d 797 (W.D.N.Y. 2016) ................................................................9

*Spar, Inc. v. Info. Res., Inc.*,
    956 F.2d 392 (2d Cir. 1992) ...............................................................................1

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
    324 F. Supp. 3d 421 (S.D.N.Y. 2018) ..........................................................20, 24

*Starr Ins. Co. v. Berry Ins. Agency*,
    No. 01 Civ. 2128, 2003 WL 1697715 (D. Kan. Mar. 21, 2003) ........................7

*Stern v. Marshall*,
    564 U.S. 462 (2011) .....................................................................................22, 23

*In re Sw. Bell Tel. Co.*,
    35 S.W.3d 602 (Tex. 2000) .................................................................................7

*Takeda GmbH v. Mylan Pharm., Inc.*,
    No. 15 Civ. 3384, 2016 WL 146443 (D.N.J. Jan. 12, 2016) ............................10

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986) .................................................................................7

*Tenas-Reynard v. Palermo Taxi Inc.*,
    No. 14 Civ. 6974, 2016 WL 1276451 (S.D.N.Y. Mar. 30, 2016) ......................5

*Tilton v. MBIA Inc.*,
    No. 19-50390 (Bankr. D. Del.) ...........................................................................6

*Trs. of Sickness & Accident Fund of Local One-L v. Philips Winson, Inc.*,
    No. 00 Civ. 9554, 2005 WL 273017 (S.D.N.Y. Feb. 3, 2005) .........................16

*In re U.S. Lines*,
    197 F.3d 631 (2d Cir. 1999) .............................................................................15

*Universal Grading Serv. v. eBay, Inc.*,
    No. 08 Civ. 3557, 2009 WL 2029796 (E.D.N.Y. June 10, 2009) .....................19

*Zohar II, 2005-1, Ltd. v. FSAR Holdings, Inc.*,
    No. 12946 (Del. Ch. Nov. 29, 2016) ..................................................................3

*In re Zohar III, Corp.*,
    No. 18-10512 (Bankr. D. Del.) ...........................................................................1

**TABLE OF AUTHORITIES**
(continued)

Page

*Zohar CDO 2003-1, Ltd. v. Croscill Home LLC*,
    No. 17 Civ. 1797 (D. Del.)............................................................................................4

**Statutes**

11 U.S.C. § 362.............................................................................................................1, 5, 7

11 U.S.C. § 509..................................................................................................................17

12 U.S.C. § 632....................................................................................................................5

28 U.S.C. § 157.......................................................................................................12, 14, 22

28 U.S.C. § 1391................................................................................................................11

28 U.S.C. § 1404.........................................................................................................1, 9, 24

28 U.S.C. § 1412...........................................................................1, 2, 8, 9, 12, 24, 25

**Rules and Regulations**

Fed. R. Civ. P. 45...............................................................................................................20

**Other Authorities**

*Recent Recommendations by the Judicial Conference for New U.S. Circuit and*
    *District Court Judgeships: Overview and Analysis* 19 (2019), *available at*
    https://crsreports.congress.gov/product/pdf/R/R45899 ...............................................23

## PRELIMINARY STATEMENT

This transfer motion is blatant forum shopping unworthy of this Court's consideration. The Zohar Funds originally chose this venue over Delaware—despite pending ownership litigation there—when they brought their much-publicized RICO case against Patriarch.[1]  This Court rightly dismissed that baseless RICO claim.  Now, two years later, the Zohar Funds, as Debtors in a Delaware bankruptcy, have switched course and are desperate to trade this courthouse for what they perceive as a more favorable forum.  But their "opportunity to search for a more conducive forum . . . concluded" once their complaint was filed in this Court.  *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 395 (2d Cir. 1992).  As explained herein, their motion is both procedurally defective and substantively meritless.  Accordingly, the Court should deny it.

*First*, this Court need not reach the merits of transferring this action because none of the movants can properly make a motion requesting that relief.  In light of Debtors' bankruptcy filing, Patriarch's claims against Debtors have been stayed.  *See* 11 U.S.C. § 362(a).  Their motion is therefore void *ab initio* and cannot be granted.  And the Non-Debtor Defendants are third-parties that lack standing to move to transfer or otherwise object to venue.

*Second*, the plain text of the two transfer statutes Debtors rely on makes clear they do not authorize transfer here.  Debtors claim that 28 U.S.C. § 1412 allows for transfer, but it addresses only "case[s] or proceeding[s] under title 11," meaning bankruptcy cases and adversary proceedings asserting causes of action created by the Bankruptcy Code.  This action is neither and does not fall within that statute's ambit.  Nor can this matter be transferred under 28 U.S.C. § 1404, which allows a civil action to be transferred only to "where it might have been brought"

---

[1] As used herein, "Debtors" refers to plaintiffs in this action who subsequently filed for bankruptcy.  *See In re Zohar III, Corp.*, No. 18-10512 (Bankr. D. Del.) (the "Chapter 11 Cases").  Defendants, counterclaimants and third-party plaintiffs are collectively referred to as "Patriarch," and third-party defendants are collectively referred to as the "Non-Debtor Defendants."

originally.  That excludes Delaware, which lacks personal jurisdiction over Ms. Tilton and where venue would have been improper because the events underlying this case occurred in New York.

**_Third_**, even if Debtors were correct that § 1412 authorizes "the transfer of 'core' bankruptcy matters," Br. 10, and they are not, no core bankruptcy matters are being litigated here.  The claims against Debtors are indisputably stayed and, therefore, are irrelevant to the transfer analysis, while the claims against the Non-Debtor Defendants are not core to the Chapter 11 Cases.  Instead, they are all state-law causes of action among parties who are not themselves debtors in any bankruptcy proceedings, and which are based entirely on events preceding Debtors' bankruptcy filings.  The mere existence of some factual overlap between Patriarch's allegations in this action seeking, among other things, money damages against Non-Debtor Defendants, on the one hand, and its allegations in a separate action pending before the Delaware Bankruptcy Court asking that court as a matter of equity to determine creditor priority, on the other, does not provide an adequate basis for transferring this action.

**_Finally_**, even if transfer were procedurally appropriate, which it is not, this Court should deny Debtors' motion on the merits.  Once Debtors brought this case in New York, the forum selection clauses in their agreements with Patriarch created a presumption against transfer under which all private-interest factors are deemed "to weigh entirely in favor" of retaining this action and must "be given controlling weight in all but the most exceptional cases."  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63-64 (2013) (quotation marks and alterations omitted).  This case is no exception.  Indeed, not only do the private-interest factors weigh in favor of retaining the case, but the public-interest factors also weigh heavily against transfer:  (i) the allegations are focused on events that occurred in New York; (ii) the parties' relationships are governed by New York law; (iii) this Court is more familiar with the underlying

allegations than the Bankruptcy Court; and (iv) the Bankruptcy Court is not statutorily or constitutionally empowered to resolve this action between non-debtors seeking money damages. Transfer would not serve judicial economy because it would ultimately put this action before a Delaware district judge with less familiarity than *either* this Court or the Bankruptcy Court. Hence, by any measure, transfer is not warranted here.

## BACKGROUND

Debtors filed this action, at the behest of the Non-Debtor Defendants, on January 16, 2017, shortly after having brought a suit against Ms. Tilton and others concerning the ownership and control of three companies in the Delaware Court of Chancery.[2]  In the instant case, Debtors alleged that (1) Ms. Tilton violated the Racketeer Influenced and Corrupt Organizations Act, (2) Patriarch breached a series of Collateral Management Agreements (each a "CMA") and Indentures to which Debtors are parties, and (3) Debtors owned and properly controlled certain equity interests in various companies (the "Portfolio Companies")—including the companies at issue in the then-recently filed Chancery Court action, as well as interests previously at issue in litigation between certain Patriarch entities, U.S. Bank N.A. ("US Bank"), and MBIA Insurance Corp. (together with MBIA Inc., "MBIA") concerning the propriety of an auction in which US Bank purported to sell those interests to MBIA—among other state-law claims.  Debtors alleged that venue was proper here because this is "the district in which a substantial part of the actions giving rise to [their] claims occurred."  Dkt. No. 1 ¶ 26 (the "Cplt.").  Venue was also proper pursuant to forum selection clauses in the parties' CMAs and Indentures, under which Debtors agreed to submit to this Court's jurisdiction and waived their right to object to this forum.  *See*

---

[2] *See Zohar II, 2005-I, Ltd. v. FSAR Holdings, Inc.*, No. 12946, Dkt. No. 1 (Del. Ch. Nov. 29, 2016).  A pending appeal from that action remains stayed in light of the Chapter 11 Cases.

Barry Decl. Exs. 4 at § 17.10 & 5 § 7.3(a).[3]  Patriarch moved to dismiss Debtors' complaint on March 6, 2017, Dkt. No. 53, which motion this Court granted on December 29, 2017, in a comprehensive opinion summarizing Debtors' allegations in great detail.  *See* Dkt. No. 105.

While Patriarch's motion to dismiss was pending, Debtors filed another action in the Delaware Court of Chancery regarding ownership and control of some of the same Portfolio Company equity interests covered by their claims here, which Ms. Tilton immediately removed to federal court and sought to have transferred to this Court or stayed in light of this case.[4]  In order to prevent further attempted abandonment of this Court, Patriarch filed its Answer, Counterclaims, and Third-Party Complaint on November 27, 2017.  Dkt. No. 88 (the "Patriarch Complaint" or "Patriarch Cplt.").  In addition to asserting three state-law counterclaims against Debtors, Patriarch impleaded the Non-Debtor Defendants and brought an additional nineteen state-law causes of action against only the Non-Debtor Defendants relating to a multi-year fraudulent scheme in which each of the Non-Debtor Defendants played a role, as well as the fundamental flaws of the aforementioned auction conducted by US Bank.  Like Debtors, Patriarch also alleged that venue was proper here "because a substantial part of the events giving rise to [Patriarch's] claims . . . occurred in this district."  *Id.* at ¶ 33.

Upon dismissal of Debtors' claims in their entirety, the Court questioned why it should retain jurisdiction over Patriarch's counterclaims and whether the Non-Debtor Defendants were

---

[3] The Barry Declaration referred to these as "samples" of Debtors' Indentures and CMAs.  Dkt. No. 153 ¶¶ 5-6.  The provisions of the "sample" Indenture and CMA attached to the Barry Declaration are identical to Debtors' other CMAs and Indentures with respect to all provisions addressed herein.  In addition, Alvarez & Marsal Zohar Management, LLC ("AMZM") entered into CMAs that relate to certain claims against AMZM.  AMZM's CMAs also contain forum selection clauses in favor of New York and waive both Debtors' and AMZM's right to object to this forum in litigation relating to those agreements as well.  *See* Dkt. No. 55 Exs. 27-29 § 7.3(b).

[4] *See Zohar CDO 2003-1, Ltd. v. Croscill Home LLC*, No. 17 Civ. 1797 (D. Del.) (stayed).

properly impleaded.  Dkt. No. 105 at 35.  Debtors and the Non-Debtor Defendants subsequently

wrote to the Court arguing for dismissal of Patriarch's claims on several grounds, including lack

of federal subject-matter jurisdiction and failure to properly implead.  Dkt. Nos. 108-110 & 115.

Patriarch then briefed the bases for federal jurisdiction, including that the Edge Act, 12 U.S.C.

§ 632, provided an independent jurisdictional basis for its claims, and why the Non-Debtor

Defendants were properly impleaded.  Dkt. 117.  Those arguments were vigorously contested at

a pre-motion conference held on February 28, 2018.  *See* Dkt. 127.

Before Debtors or the Non-Debtor Defendants could move to dismiss on jurisdictional

and Rule 14 impleader grounds, however, Debtors voluntarily commenced the Chapter 11 Cases

in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on

March 11, 2018.  Shortly thereafter, the Bankruptcy Court entered an order approving an

agreement that, among other provisions, temporarily stayed this litigation.  *See* Dkt. 130.  This

Court extended the stay of the instant action until October 8, 2019, Dkt. 140, and held a hearing

on October 7, 2019, at which Debtors confirmed that they still intended to move to dismiss on

jurisdictional and impleader grounds, Dkt. No. 147 at 15; *see also* Dkt. No. 146 (setting briefing

schedule for "the motion regarding subject matter jurisdiction and Rule 14").[5]

Instead, Debtors and the Non-Debtor Defendants filed letters accepting federal subject

matter jurisdiction over Patriarch's claims and asserting that any motion to dismiss on impleader

grounds would be futile, in both cases parroting arguments previously made by Patriarch and

---

[5] Although the stay imposed by the parties' agreement expired, all parties agree that Patriarch's claims against Debtors remain stayed in light of the ongoing Chapter 11 Cases.  *See* 11 U.S.C. § 362(a).  Despite stating that they intended to move for a determination that the § 362 stay applies to this litigation in its entirety at the October 7, 2019 status conference, Debtors have not done so nor has anyone else.  They apparently now concede, as they must, that "[w]ithin a single case, some actions may be stayed, others not," under § 362.  *Tenas-Reynard v. Palermo Taxi Inc.*, No. 14 Civ. 6974, 2016 WL 1276451, at *5 (S.D.N.Y. Mar. 30, 2016).

5

previously disputed by Debtors and the Non-Debtor Defendants.  *Compare* Dkt. Nos. 108-110 & 115, *with* Dkt. Nos. 150 & 156.  Debtors' and the Non-Debtor Defendants' jurisdictional vacillations based on their perceived short-term interests is telling.[6]  Yet there is no longer any dispute that this case and all parties thereto are properly before this Court.

Not only have Debtors and the Non-Debtor Defendants reversed course on federal jurisdiction and impleader, Debtors have also moved to abandon their chosen forum and transfer venue to Delaware, which motion certain Non-Debtor Defendants (though not US Bank) have joined.  *See* Dkt. Nos. 150, 152, 155 & 156.  But this action involves New York-based parties litigating claims governed by New York law, relating to contracts with New York forum selection clauses, based on events that occurred in New York, and it is pending before a Court that has held numerous hearings and issued a detailed opinion regarding Debtors' claims against Patriarch during the last three years.  Debtors and the Non-Debtor Defendants nevertheless wish to have the case transferred to Delaware, which has no connection to any of Patriarch's claims against the Non-Debtor Defendants but for the existence of a recently filed adversary proceeding that is pending before a court that has held no hearings and issued no decisions in that matter.  *See Tilton v. MBIA Inc.*, No. 19-50390 (Bankr. D. Del.) (the "Equitable Subordination Action").  Moreover, the Equitable Subordination Action's path forward remains unclear, as no responsive pleadings or motions to dismiss have been filed to date.

---

[6] These jurisdictional reversals are now par for the course.  For instance, Debtors argued for diversity jurisdiction in this action when they believed that this Court provided a favorable venue for them, but they were eventually forced to concede diversity jurisdiction was lacking.  *Compare* Cplt. ¶¶ 9-11 & 23 *and* Dkt. No. 34 at 3, *with* Dkt. No. 58 at 25.  Debtors engaged in a similar gambit in which they initially pleaded that their principal place of business was New York before seeking to withdraw that admission because it meant there was no diversity jurisdiction.  *Compare Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd. et al.*, No. 16 Civ. 4488 (S.D.N.Y.), Dkt. Nos. 24, 48, 51 each at ¶¶ 7, 9, 11, *with* Dkt. 68 ¶¶ 8, 10, 12.

## ARGUMENT

### I.   The Motion To Transfer Venue Should Be Denied As Moot.

This motion need not unnecessarily waste the Court's time because it can be resolved on a very simple basis:  Debtors' motion is dead on arrival in light of the automatic stay that applies to Patriarch's claims against Debtors.  *See* 11 U.S.C. § 362(a).  It is black-letter law that "actions taken in violation of the stay are void," *Fed. Ins. Co. v. Sheldon*, 150 B.R. 314, 319 (S.D.N.Y. 1993), which is a protection for debtors and creditors that cannot be waived, *In re Leiba*, 529 B.R. 501, 509 (Bankr. E.D.N.Y. 2015).  Accordingly, "this Court may not render a decision" on a motion to transfer involving claims against a debtor because "[a]bsent relief from the stay," which only the Bankruptcy Court can grant, such "judicial actions . . . are void *ab initio*."  *Oil & Gas Mgmt., Inc. v. Burnett Oil Co., Inc.*, No. 12 Civ. 1279, 2013 WL 171855, at *3-4 (W.D. Pa. Jan. 16, 2013) (quotation marks omitted); *see also, e.g.*, *Starr Ins. Co. v. Berry Ins. Agency*, No. 01 Civ. 2128, 2003 WL 1697715, at *1 (D. Kan. Mar. 21, 2003) (denying defendant-debtor's motion to transfer "as moot" until "if and when the Bankruptcy Court allows plaintiffs to continue to pursue their claims"); *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 604 (Tex. 2000) ("the venue transfer order is void for Builders Transport" because it "filed for bankruptcy").

Nor can the Non-Debtor Defendants' purported motion to transfer venue be granted.  *See* Dkt. No. 154.  Although the stay is "limited to debtors and do[es] not encompass [their] non-bankrupt codefendants," *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986), the Non-Debtor Defendants' approach suffers different fatal flaws.  As an initial matter, no such motion has properly been made.  Local Civil Rule 7.1(a)(2) provides that "all motions shall include" a "memorandum of law setting forth the cases and other authorities relied upon in support of the motion."  The Non-Debtor Defendants did not comply with the plain language of that requirement, instead seeking to join Debtors' improper motion to transfer.  Dkt. No. 155.

Their "failure to comply with Local Civil Rule 7.1 is sufficient cause, by itself, for denying [the] motion." *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12 Civ. 6852, 2013 WL 6334581, at *3 (S.D.N.Y. Dec. 5, 2013); *see also Martilet Mgmt. Serv. Inc. v. Bailey*, No. 12 Civ. 6691, 2013 WL 5420966, at *5 (S.D.N.Y. Sept. 27, 2013) (defendants "waived their venue objection" by moving to transfer "unaccompanied by a memorandum of law as required by Local Civil Rule 7.1(a)(2)"). But even if they had properly made their own motion, that hypothetical motion would have to be denied. The venue statutes "are concerned solely with the institution of the original action" and "do not apply to [Patriarch's] third-party claims" against the Non-Debtor Defendants. *Seafood Imports, Inc. v. A.J. Cunningham Packing Corp.*, 405 F. Supp. 5, 8 (S.D.N.Y. 1975). Because venue was proper as to Debtors' claims against Patriarch, the Non-Debtor Defendants may not move to transfer. *Id.*; *see also, e.g., Foremost Guar. Corp. v. Pub. Equities Corp.*, No. 86 Civ. 6421, 1988 WL 125667, at *5 (S.D.N.Y. Nov. 10, 1988) (denying transfer because "third-party defendants lack standing to object to venue").

## II.   Transfer Is Not Permitted Under Either Statute Relied Upon By Debtors.

### A.   This Action Does Not Arise "Under Title 11" (28 U.S.C. § 1412).

The language of 28 U.S.C. § 1412 establishes that it is inapplicable. The statute allows only "a case or proceeding under title 11" to be transferred. *Id*. Regardless of certain courts' "frustration" that the statute was not drafted differently, "[t]here is nothing ambiguous about that language," which "simply do[es] not grant . . . the power to transfer . . . litigation that is not a case or proceeding 'under' the Bankruptcy Code." *Multibank, Inc. v. Access Global Capital LLC*, 594 B.R. 618, 623-24 (Bankr. S.D.N.Y. 2018). Rather, those words have a specific meaning: "A case is 'under' title 11 if it is the main bankruptcy case itself, and a proceeding is one that is 'under' the Bankruptcy Code if it asserts causes of action that are created by the Bankruptcy Code itself." *Id*. at 622. Section 1412 is properly read to apply only to such actions.

*Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 139-40 (Bankr. S.D.N.Y. 2017).

Plainly, this is not such a case. As in *Multibank*, this action "was filed long before any bankruptcy case was pending," it "asserts breach of contract claims and other state law theories of liability and asserts no claims created by the Bankruptcy Code," and it "is based entirely on conduct that pre-dates the bankruptcy filing." *Multibank*, 594 B.R. at 622; *see also Onewoo*, 566 B.R. at 139 (similar). Nor do Debtors seem to disagree, as they do not claim that this case arises "under title 11." Accordingly, § 1412 does not authorize transfer of this action.

**B.     This Action Could Not "Have Been Brought" In Delaware (28 U.S.C. § 1404).**

Debtors' reliance on 28 U.S.C. § 1404(a) is equally unavailing because it allows civil litigation to be transferred only to another court "where it might have been brought." That threshold question requires consideration of whether "the transferee court would have had . . . personal jurisdiction over the defendants, and if venue would have been proper in the transferee court," *Smolen v. Brauer*, 177 F. Supp. 3d 797, 801 (W.D.N.Y. 2016), which must be assessed as of "the time of the bringing of the action" rather than "the time of the transfer," *Hoffman v. Blaski*, 363 U.S. 335, 342 (1960). Movants under § 1404 must provide "clear and convincing evidence" that transfer is warranted, *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010), but Debtors waived these arguments by failing to address them whatsoever. Regardless, it is clear that this action could not have been brought in Delaware.

**1.   The District Of Delaware Lacked Personal Jurisdiction Over Ms. Tilton.**

Had Debtors attempted to demonstrate that this case "might have been brought" in Delaware, and they did not, they would have needed to plead a basis for personal jurisdiction "as to each defendant" to have filed this action in the District of Delaware. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). They made no attempt to do so for Ms. Tilton because they could not. Debtors properly alleged that Ms. Tilton "is a resident of Florida" and "has offices, and regularly

transacts business in New York County, New York." Cplt. ¶¶ 21, 25. Although the complaint references her involvement in prior Delaware litigation, it is of no moment that she has not previously contested personal jurisdiction because courts within the Third Circuit hold that "a party's consent to jurisdiction in one case . . . extends to that case alone." *Takeda GmbH v. Mylan Pharm., Inc.*, No. 15 Civ. 3384, 2016 WL 146443, at *1 n.1 (D.N.J. Jan. 12, 2016) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)).

While Patriarch does not dispute that the corporate Patriarch parties are subject to personal jurisdiction in Delaware where they are incorporated, their connection to Ms. Tilton does not confer personal jurisdiction over her. On that point, *Baier v. Upper N.Y. Inv. Co. LLC*, No. 6896, 2018 WL 1791996 (Del. Ch. Apr. 16, 2018), is instructive. *Baier* first rejected an argument for personal jurisdiction over an individual based on his having transacted business in Delaware via incorporation of his corporate co-defendants, explaining that "mere formation of a Delaware entity, without more, is insufficient . . . to exercise jurisdiction." *Id.* at *9. Nor was there jurisdiction in light of his role as manager of his co-defendants where his "alleged fraud was completed outside of Delaware," the action was not governed by Delaware law, and "foreign courts ha[d] already made substantive rulings relating to the controversy." *Id.* at *9-10; *see also Hartsel v. Vanguard Grp., Inc.*, No. 5394, 2011 WL 2421003, at *15 (Del. Ch. June 15, 2011) (personal jurisdiction over individuals who "actively . . . facilitated" securities purchases by Delaware-incorporated co-defendants and "over[saw] their management" without "undert[aking] any action in Delaware" would "offend the Due Process Clause because of their lack of contacts with this State" under similar circumstances). Those same factors are present here, as discussed *infra* at § IV, precluding Delaware's exercise of personal jurisdiction over Ms. Tilton.

2.      **The Events Giving Rise To Debtors' Claims Occurred In New York.**

Even if there were personal jurisdiction over Ms. Tilton in Delaware when the action was brought, and there was not, venue still would have been improper.  There are three scenarios in which venue lies under 28 U.S.C. § 1391(b), two of which can immediately be ruled out.  ***First***, § 1391(b)(1) does not apply because not "all defendants are residents of" Delaware.  Ms. Tilton is a Florida resident.  Cplt. ¶ 21.  ***Second***, § 1391(b)(3) does not apply because there was another "district in which [the] action may . . . be brought"—this one.  Indeed, Debtors long ago took the position that "[v]enue in the Southern District of New York is appropriate."  Cplt. ¶ 26.  That leaves only § 1391(b)(2), which requires closer examination but reaches the same result.

Under § 1391(b)(2), venue may lie where "a substantial part of the events . . . giving rise to the claim occurred."  That requirement "preserve[s] the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute," and makes clear that events with "only have some tangential connection with the dispute in litigation are not enough." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).   In their Complaint, Debtors alleged that venue was appropriate here "because it is ***the district*** in which a substantial part of the actions giving rise to the[ir] claims occurred."   Cplt. ¶ 26 (emphasis added); *see also infra* § IV.A (discussing New York parties and events).  The combination of that "general allegation" and the absence of any "affidavits" or "contention[s] to the effect that any relevant event occurred in Delaware" precludes finding that this action "may be transferred." *Onewoo*, 566 B.R. at 142-43.  Nor could Debtors have substantiated any such contention: the only Delaware events mentioned are a fully concluded trial noted in the background allegations and the filing of a pleading in that action, Cplt. ¶¶ 83-86, 203, which did not "directly give rise to a claim" against Patriarch, *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012) (noting that only such events are relevant because "significant events . . . material to the

plaintiff's claim must have occurred in the district in question" (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

### III.   Transfer Is Unavailable Even Under Debtors' Overbroad Reading Of § 1412 Because The Causes Of Action Being Litigated Are Not "Core."

Even if § 1412 authorized the transfer of all "core" proceedings, contrary to its plain text, this case would still not be transferable because no core bankruptcy matters are being litigated.

#### A.   Patriarch's Claims Are Not "Core Proceedings."

"Core proceedings" are those "arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1), which includes only actions that "clearly invoke substantive rights created by federal bankruptcy law" or which "are not based on any rights expressly created by the Bankruptcy Code, but nevertheless, would have no existence outside of the bankruptcy," *In re Robert Plan Corp.*, 777 F.3d 594, 596-97 (2d Cir. 2015) (quotation marks and alterations omitted).  Patriarch's causes of action do not fit within either of those two categories.

Debtors accurately predicted Patriarch's position that the Patriarch Complaint contains only "simple state-law claims for monetary damages between parties that are not themselves in bankruptcy."  Br. 15.  What they left out, however, is that the Patriarch Complaint was also filed months before Debtors' Chapter 11 Cases.  That "prepetition timing . . . is crucial," *In re 610 W. 142 Owners Corp.*, 219 B.R. 363, 370 (Bankr. S.D.N.Y. 1998), because its status as "core or non-core is determined at the time [it was] filed," *Credit Suisse AG v. Appaloosa Inv. Ltd. P'Ship I,* No. 15 Civ. 3474, 2015 WL 5257003, at *8 n.72 (S.D.N.Y. Sept. 9, 2015).  Debtors' subsequent bankruptcy cannot retroactively change the nature of Patriarch's claims.  Moreover, Patriarch's state-law claims do not "depend on bankruptcy laws for [their] existence" and "could proceed in a court that lacks federal bankruptcy jurisdiction," *DeWitt Rehabilitation & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012), as they have here.

Patriarch's claims against the Non-Debtor Defendants sound in contract, tort, and fraud. In remarkably similar circumstances, Judge Hellerstein refused to transfer to the Delaware Bankruptcy Court pre-bankruptcy litigation that involved claims between non-debtors relating to a "breach of the [debtor's] indenture, related state causes of action, and fraud," explaining that the suit was "not a 'core' bankruptcy proceeding," nor was it "convert[ed] into a core proceeding" by the inclusion of stayed claims against debtors. *Gruss Global Inv. Master Fund, Ltd. v. Deutsche Bank Trust Co. Ams.*, No. 09 Civ. 9723, 2010 WL 11688547, at *1 (S.D.N.Y. July 23, 2010). Indeed, courts routinely retain jurisdiction over non-core causes of action in similar situations. *See, e.g.*, *ICICI Bank Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241, 249 (S.D.N.Y. 2017) (refusing to transfer contract and fraud claims relating to agreement that "significantly predate[s] [debtor's] bankruptcy petition"); *Multibank,* 594 B.R. at 622 (refusing to transfer action "assert[ing] breach of contract claims and other state law theories of liability . . . based entirely on conduct that pre-dates the bankruptcy filings"); *Onewoo*, 566 B.R. at 139 (refusing to transfer action involving "common law fraud, breach of contract, and other theories . . . filed when no bankruptcy case was pending").

A recurring theme raised by Debtors is that Patriarch's claims against the Non-Debtor Defendants are "inextricably tied" to the Chapter 11 Cases. Br. 11. But the Third Circuit— whose law will apply if transfer is granted—has explicitly rejected the "intertwinement theory" as "legally unsound," instead requiring courts to "engage in a claim-by-claim analysis to determine whether a proceeding is core." *In re Exide Techs.*, 544 F.3d 196, 220 (3d Cir. 2008). The Bankruptcy Court will not be able to adjudicate Patriarch's claims against the Non-Debtor Defendants based on their relationship to the Equitable Subordination Action because "non-core claims do not become core simply by virtue of being pursued in the same litigation as core

claims." *Id.* To the extent Debtors rely on judicial economy as a reason to transfer this case, that argument is a non-starter under *Exide*, as well as for the reasons discussed *infra* at § IV.B.2.

Moreover, the cases on which Debtors rely to argue Patriarch's state-law claims are core based upon factual "overlap" between this action and the Equitable Subordination Action address quite distinct scenarios. *See* Br. 17. *In re CBI Holding Co., Inc.* held that counterclaims brought by a debtor's successors-in-interest against a party which had filed a proof of claim (*i.e.*, a demand for payment) against the estate were core proceedings. 529 F.3d 432, 462, 464-65 (2d Cir. 2008). Next, *In re GM Crocetti* involved both a debtor's objection to a claim filed against it by creditors and its counterclaim against those same creditors. No. 08 Civ. 6239, 2008 WL 4601278, at *4 (S.D.N.Y. 2008). But this transfer motion does not involve any counterclaims by Debtors against either Patriarch or the Non-Debtor Defendants in connection with proofs of claim filed against the estate, nor does it involve Debtors' objections to any such proofs of claim. *Cf.* 28 U.S.C. §§ 157(b)(2)(B) & (C) ("Core proceedings include . . . allowance or disallowance of claims against the estate" and "counterclaims by the estate against persons filing claims against the estate"); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (holding contract claim against non-debtor based on pre-petition contract where no claim was filed in bankruptcy court "is non-core"). And *In re Petrie Retail, Inc.*, 304 F.3d 223 (2d Cir. 2002), and *In re Kirwan Offices S.a.r.L.*, 592 B.R. 489 (S.D.N.Y. 2018), both dealt with reorganization plans, the "confirmation" of which are also statutorily core proceedings, 28 U.S.C. § 157(b)(2)(L). That factor is also absent here, as no reorganization plan has been filed in the Chapter 11 Cases. Debtors' cases relate exclusively to disputes that debtors or their successors were actively litigating. By contrast, all parties agree that the claims against Debtors here are stayed. That distinction is crucial because while "resolving claims against a debtor will nearly

always be integral to resolving a bankruptcy process, . . . claims against third parties" such as the Non-Debtor Defendants "will be integral only in rare cases." *In re Kirwan Offices*, 592 B.R. at 511 (quotation marks omitted). Debtors provide no basis for finding this to be such a rare case.

### B.   Certain Claims' Supposed Relationships To Debtors' Estate Are Irrelevant.

Elsewhere Debtors attempt to shoehorn this action into the Chapter 11 Cases by arguing that Patriarch is seeking "to exercise control over" Debtors' property. Br. 12. But Patriarch's stayed claims for declaratory relief against Debtors regarding ownership of purportedly estate property are irrelevant for purposes of evaluating Patriarch's active claims against the Non-Debtor Defendants, and no authority is provided for the proposition that "Patriarch's ownership and control of the Zohar Equity is a predicate to resolving" other claims against the Non-Debtor Defendants. Br. 13. The cases Debtors cite are inapposite because they involved adversary proceedings directly litigating whether certain property belonged to debtors. *See In re Deflora Lake Dev. Assoc., Inc.*, 571 B.R. 587, 589 (Bankr. S.D.N.Y. 2017) (adversary proceeding "seeking a determination that certain escrow funds are property of the bankruptcy estate"); *In re New Century Holdings, Inc.*, 387 B.R. 95, 105-06 (Bankr. D. Del. 2008) (adversary proceeding requiring "determination of whether [retirement plan assets] are property of the Debtors' bankruptcy estate."). In light of the automatic stay as applied to Patriarch's causes of action against Debtors for declaratory relief, that is not the case here.

Moreover, the Second Circuit has "declined to adopt a general rule that an action is core merely because it involves property of the estate," which "'would create an exception'" that "'would swallow the rule[s]'" limiting bankruptcy jurisdiction. *DeWitt*, 464 B.R. at 592 (quoting *In re U.S. Lines*, 197 F.3d 631, 637 (2d Cir. 1999) (alterations omitted)); *see also ResCap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259, 264 (S.D.N.Y. 2014) (rejecting argument that contract action brought by debtor was core because "it concerns the administration of the

bankruptcy estate" by potentially increasing estate's assets as "prov[ing] too much").

Even assuming *arguendo* that determining ownership were a predicate to resolving Patriarch's claims against the Non-Debtor Defendants, that would still be legally insufficient to preclude Patriarch from litigating its claims against the Non-Debtor Defendants in this district. As the Second Circuit has explained in a related context, Debtors cannot object to Patriarch's prosecution of its claims against the Non-Debtor Defendants "solely because of an apprehended later use against the debtor of . . . the precedential effect of an adverse decision," as such arguments would otherwise allow debtors to engage in "vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003). Of course, that is precisely what Debtors are trying to do here. But Debtors are not ultimately responsible for the harm caused to Patriarch by the Non-Debtor Defendants. Because a determination that the Non-Debtor Defendants are liable to Patriarch "would have no immediate economic impact on the estate of the debtor," Debtors' interference should not be countenanced. *Trs. of Sickness & Accident Fund of Local One-L v. Philips Winson, Inc.*, No. 00 Civ. 9554, 2005 WL 273017, at *2 (S.D.N.Y. Feb. 3, 2005).

Debtors also argue that certain claims are within the Bankruptcy Court's exclusive jurisdiction because they are derivative, Br. 13, an issue irrelevant to the question at bar. As recognized by *Gruss Global* in refusing to transfer a matter to a bankruptcy court based on that exact argument, this Court is equally capable of addressing whether these claims properly belong to Debtors or Patriarch. 2010 WL 11688547, at *2. Notably, Debtors and certain Non-Debtor Defendants previously made a variant of this same argument in pre-motion letters asserting that these causes of action should be dismissed for failure to state a claim. *See* Dkt. Nos. 108, 110 & 115, each at 2. Patriarch looks forward to briefing that Rule 12(b)(6) motion at the appropriate

time, at which point it will be determined that either the claims belong to Patriarch and may proceed, or the claims cannot be asserted by Patriarch and should be stayed or dismissed.  In either event, the claims would only proceed if they are not derivative, a proposition that can be "tested[ ] in the district court."  *Gruss Global*, 2010 WL 11688547, at *2.  That unresolved issue provides no basis for transfer based upon Debtors' cursory analysis.

### C.    Possible Impact On Estate Administration Cannot Render This Action Core.

Debtors suggest that Patriarch's claims are core because they may "impact" the process of administering claims against Debtors.  Br. 19.  That speculative argument ignores black-letter law that a proceeding is not "core" simply because it "could conceivably have an[] effect upon the debtors' estate being administered."  *In re Robert Plan*, 777 F.3d at 597 (internal alterations and quotation marks omitted).

*First*, Debtors argue that resolution of this action will impact whether Ms. Tilton's claims against the estate are allowed, Br. 19, without explaining why that is so and although Debtors' monetary obligations to Ms. Tilton are not at issue here.  *Second*, they seem to argue that if Patriarch prevails then the Non-Debtor Defendants will be empowered to step into Patriarch's shoes and recover their damages from the estate, *id.*, citing to 11 U.S.C. § 509(a), a statute that would apply only if Debtors and the Non-Debtor Defendants somehow shared liability for Patriarch's claims against the Non-Debtor Defendants.  But no explanation is provided as to why that statute would apply or what the basis might be for finding that Debtors and the Non-Debtor Defendants share liability for claims brought only against the Non-Debtor Defendants.  *Third*, Debtors note that resolution of certain causes of action "will have a bearing on the amount of MBIA's claim against Zohar I," Br. 20, but again they provide no explanation and cite no authority explaining why a damages award against MBIA for breaching its duties to Patriarch or violating the Uniform Commercial Code would somehow inure to MBIA's benefit in connection

with MBIA's claims against Debtors.  **Fourth**, Debtors speculate that they might be subject to claims for indemnification in the event that Patriarch prevails against the Non-Debtor Defendants, *id.*, but the Non-Debtor Defendants would not qualify for indemnification in light of their alleged intentional bad acts.[7]  **Finally**, Debtors suggest that certain Non-Debtor Defendants are entitled to "payment of the fees and expenses" under a cash collateral order in the Chapter 11 Cases.  *Id.*  But that cash collateral order has already expired, and in any event Debtors do not explain how it is at all related to this action when it specifically provided for payments in connection with "the Cases," which were defined to refer to the Chapter 11 Cases without reference to the instant litigation.  *See* Barry Decl. Ex. 15 at preamble, §§ 12(c) & 18(a)(6).

Although advanced in various ways, and without much in the way of substantiation, each of these arguments boils down to the same basic proposition: that the Non-Debtor Defendants will somehow seek to recoup their damages and/or expenses relating to this litigation from the Debtors.  But "it is well-settled" that such second-order effects from "a state law claim against a non-[debtor] do[ ] not transform [this] proceeding into a core proceeding."  *In re AOG Entm't, Inc.*, 569 B.R. 563, 576 (Bankr. S.D.N.Y. 2017).

## IV.    Even If Transfer Were Permitted, This Case Should Remain In New York.

Where a case is transferrable under either of the statutes Debtors rely on, a court must evaluate the private and public factors to determine whether or not the case **should** be transferred.  *See, e.g.*, *ICICI*, 565 B.R. at 250-58.  Here, all of the factors weigh against transfer.

---

[7] *See* Barry Decl. Ex. 4 § 6.8(a)(iii) (exempting losses incurred via "negligence, willful misconduct or bad faith"); Barry Decl. Ex. 5 § 4.5(a) (exempting loses incurred via "fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty . . . or reckless disregard, of its duties").  Even absent such language, intentional wrongs are not indemnifiable under New York law.  *See, e.g.*, *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 399 (1981).

**A.      The Parties' Private Interests Favor Retaining This Action In New York.**

In arguing that transfer would be "convenient for the parties," Br. 24, Debtors overlook an indisputable dispositive fact: the agreements underlying this action contain provisions in which Debtors agreed to "submit to the non-exclusive jurisdiction" of this Court and "waive[d], to the fullest extent that they may legally do so," any objection to it "as an inconvenient forum." Barry Decl. Ex. 4 at § 17.10; *see also id.* Ex. 5 § 7.3(a).  Accordingly, the Court "must deem" all transfer factors relating to the parties' private interests "to weigh entirely in favor" of retaining this action and "consider arguments about public-interest factors only," which "will rarely" prevail on a transfer motion.  *Atl. Marine*, 571 U.S. at 64.  That is because "in all but the most exceptional cases," which this is not, "'the interest of justice' is served by holding parties to their bargain."  *Id.* at 63, 66.  Although the permissive forum-selection clauses did not require Debtors to bring suit in this district in the first instance, their choice of this forum has "now become mandatory" because they filed suit here before "seek[ing] to transfer the matter in contravention of those clauses."  *ICICI*, 565 B.R. at 252-53.  Moreover, that choice is also binding on the Non-Debtor Defendants in light of their "close business relationship" and the manner in which they "acted in concert" with Debtors to defraud and harm Patriarch.  *Universal Grading Serv. v. eBay, Inc.*, No. 08 Civ. 3557, 2009 WL 2029796, at *15-17 (E.D.N.Y. June 10, 2009).

To be clear, however, the parties' private interests would still favor denying transfer even absent the forum-selection clauses.  ***First***, Debtors' initial "choice of [this] forum is generally entitled to considerable weight and should not be disturbed unless the balance of factors is strongly in favor" of transfer, particularly where, as here, "there is a material connection . . . between the forum state and the underlying events allegedly underlying the claim."  *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998).  In light of their choice to bring suit against Patriarch here, Debtors' subsequent attempt to evade this Court following the dismissal

19

of their claims is blatant and improper forum-shopping in favor of what they now perceive as a friendlier arena. **Second**, "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted," *id.* at 657 (quotation marks omitted), but Debtors have not identified any witnesses located in Delaware, rather than New York, let alone any of the third-party witnesses referenced in the pleadings. *See, e.g.*, Patriarch Cplt. ¶¶ 88, 94, 150, 165. Indeed, transfer risks placing potential New York-based witnesses outside of the parties' power to subpoena their attendance at trial under Fed. R. Civ. P. 45(c)(1), an "important factor weighing [against] transfer." *Berman*, 30 F. Supp. 2d at 658. **Finally**, Debtors argue that many parties "are Delaware entities" and the parties are already "actively litigating in Delaware," Br. 25, but the parties' convenience is assessed based on their "principal places of business and the location of their offices," *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 439 (S.D.N.Y. 2018). Because each party to this action (as alleged) maintains offices, and in many cases its principal place of business, in New York, this Court remains more convenient than Delaware. *See* Patriarch Cplt. ¶¶ 2–21.

### B.    The Public Interest Favors Retaining This Action In New York.

Debtors' public interest arguments focus exclusively on judicial economy, Br. 20-24, ignoring other public interest factors, including, most critically, "the local interest in having localized controversies decided at home," *Atl. Marine*, 571 U.S. at 62 n.6. Moreover, even their judicial economy argument is premised on the mistaken assumption that the Bankruptcy Court can resolve this action, which it cannot, and fails to address the "difficulties flowing from court congestion." *Id*. For each of these reasons, as explained below, transfer should be denied.

### 1.    This Is A Local Controversy Involving New York-Based Events And Law.

Both Debtors' initial pleadings and the Patriarch Complaint agree on one fundamental point: "a substantial part of the actions" and "events" giving rise to this litigation occurred in

New York.  Cplt. ¶ 26; Patriarch Cplt. ¶ 33.  This is hardly surprising, since each and every party to this action is either based in, or at minimum operates offices in, New York.  *See* Patriarch Cplt. ¶¶ 2–21.  Moreover, the alleged actions all arise under a series of contracts containing broad New York choice of law provisions, governing both construction of those agreements as well as matters arising out of or relating to them.  *See, e.g.*, Barry Decl. Ex. 4 at § 17.9 & Ex. 5 at § 7.4; Dkt. No. 55 Exs. 27-29 each at § 7.5.  Though Debtors might like to get away, "the locus of operative facts as well as the interests of efficiency and fairness favor a New York forum" for this quintessentially New York litigation.  *LaFarge N. Am.*, 599 F.3d at 113.

Aside from the Chapter 11 Cases, moreover, Debtors fail to identify any meaningful connection between this action and Delaware.  Instead, they misleadingly quote from this Court's opinion dismissing their claims, in which it was suggested that the Delaware Chancery Court may be "best positioned to adjudicate the remaining state law claims."  Dkt. No. 105 at 30 (quoted at Br. 24).  But the Court was referring to Debtors' dismissed claims against Patriarch, not Patriarch's claims against the Non-Debtor Defendants that are the subject of this motion to transfer.  Furthermore, Debtors fail to mention that there are no such ongoing matters in the Delaware Chancery Court at this time, which in any event is not the court to which transfer is sought.  That red herring in no way favors transfer to the Bankruptcy Court.

### 2.      Transferring This Action Will Not Advance Judicial Economy.

If this action were transferred to Bankruptcy Court, it would ultimately have to be re-transferred to a Delaware district judge for resolution, as the Bankruptcy Court lacks statutory or constitutional authority to resolve the claims at issue.  Granting the motion would, as a result, put this action before a new judge with no familiarity with the parties and issues, and with an already overcrowded docket.  That result would be terribly inefficient.

Although the Bankruptcy Court can "hear" a non-core proceeding "that is otherwise

related to a case under title 11," it is only authorized to "submit proposed findings of fact and conclusions of law to the district court" in such matters, with "any final order or judgment [to] be entered by [a] district judge" upon reviewing *de novo* those submissions and any objections to them.  28 U.S.C. § 157(c)(1).  Because this action is not a core bankruptcy proceeding, as set forth *supra* at § III, the Bankruptcy Court has only limited powers to recommend how it should be resolved by a district judge lacking any involvement in the Chapter 11 Cases.  Rather than advance judicial efficiency, Debtors' proposal would thus require "duplicate reviews" of the facts and legal issues by multiple courts that would be both "costly and time-consuming, and unnecessarily expend judicial resources."  *DeWitt*, 464 B.R. at 593 (withdrawing reference for non-core adversary proceeding from bankruptcy court to district court).[8]

Yet even if the state-law claims at issue here were statutorily core to the bankruptcy proceedings, the Bankruptcy Court still could not decide them.  Bankruptcy judges "lack[ ] the constitutional authority to enter final judgment on a state law [cause of action] that is not resolved in the process of ruling on a creditor's proof of claim" because "Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article."  *Stern v. Marshall*, 564 U.S. 462, 503 (2011).  Accordingly, not all statutorily core proceedings may be decided by a bankruptcy

---

[8] *See also, e.g.*, *ICICI* , 565 B.R. at 255 (denying transfer to bankruptcy court as "any [assumed] increase in efficiency would be marginal at best" because "the bankruptcy judge [is] required to submit proposed findings of fact and conclusions of law for de novo review"); *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 205–06 (E.D.N.Y. 2013) (withdrawing reference where district court would "still be required to review de novo any findings made by the bankruptcy court" because in that scenario "judicial resources [would] be better served" by the district court "oversee[ing] the entire litigation"); *In re Coudert Bros.*, No. 11 Civ. 4949, 2011 WL 7678683, at *6 (S.D.N.Y. Nov. 23, 2011) (same because non-core claims must "reach [the district court] at some point" and there was no basis to assume a bankruptcy judge's "familiarity, or experience handling other aspects of the . . . bankruptcy, would materially assist" management of litigation).

judge lacking such protections, as "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 499. The causes of action at issue here fall squarely within *Stern* because they are "made of the stuff of the traditional actions at common law," rather than bankruptcy statutes, they do not relate to any claims that have been disputed in the Chapter 11 Cases, and Patriarch has not otherwise consented to their final resolution by the Bankruptcy Court, rendering them the responsibility of "Article III judges in Article III courts." *Id.* at 484.

Because the Bankruptcy Court lacks both statutory and constitutional authority to resolve the claims in the Third-Party Complaint, any hypothetical efficiency gained by sending the claims to the Bankruptcy Court would be negated by a District of Delaware judge having to learn the case anew and make *de novo* determinations. That process would entail duplicative judicial efforts, with the end result being a decision rendered by a judge with less initial familiarity than either this Court or the Bankruptcy Court. Moreover, the Delaware district judge in question would be one already carrying a caseload nearly twice as heavy as those in this Court. *See* Barry J. McMillion, Cong. Research Serv., R45899, *Recent Recommendations by the Judicial Conference for New U.S. Circuit and District Court Judgeships: Overview and Analysis* 19 (2019), *available at* https://crsreports.congress.gov/product/pdf/R/R45899. Consideration of "court congestion" thus also weighs in favor of denying transfer. *Atl. Marine*, 571 U.S. at 62 n.6.

Furthermore, even assuming the Bankruptcy Court could ultimately resolve this action, it has issued no decisions and it indeed it has held no hearings in the Equitable Subordination Action to date. While it is familiar with the Chapter 11 Cases, they have not yet provided any occasion to begin learning about the years-long fraudulent scheme in which the Non-Debtor

Defendants engaged.  In contrast, this Court has overseen this matter for nearly three years, during which time it has issued a detailed opinion on Patriarch's motion to dismiss and has held multiple conferences with the parties.  This Court's familiarity with the underlying allegations and parties "would be lost upon transfer . . . , resulting in greater inefficiency in resolving both dispositive motions and trial issues" going forward.  *Brightstar*, 324 F. Supp. 3d at 442.

Debtors' key cases are not to the contrary.  *See* Br. 21-22.  Debtors first rely on *Del. Trust Co. v. Wilmington Trust, N.A.*, but that case—unlike this one—involved transfer of a civil matter where (i) the bankruptcy action was filed before the civil action, (ii) the civil action was expressly intended to address legal issues that had already been presented to the bankruptcy court in connection with its oversight of the debtors' cash collateral, (iii) it was a core bankruptcy proceeding that arose from "the need to afford adequate protection for creditors with respect to their interests in [debtors'] cash collateral" which "flows directly from the Bankruptcy Code" and "was triggered by [debtors'] bankruptcy filing," and (iv) as a result, the civil action could "be promptly adjudicated" by a bankruptcy judge who was already "intimately familiar" with the "issues, . . . and, indeed with the facts of [the] dispute specifically."  534 B.R. 500, 513, 521 (S.D.N.Y. 2015).[9]  Debtors next discuss *Credit Suisse*, which similarly involved a civil action filed while a bankruptcy case was already pending elsewhere and that was intended to frustrate those ongoing proceedings by asking a New York court "to rule on whether the defendants' conduct in the Bankruptcy Case violate[d]" a contract and seeking to enforce rights "in direct conflict with defendants' status and rights under the Bankruptcy Code."  2015 WL 5257003, at

---

[9] *Del. Trust* also makes clear that even when transferring core actions under § 1412, "courts consider the same factors as under" § 1404, including whether the action could have been brought in the transferee district.  534 B.R. at 519.  As discussed *supra* at § II.B, this action could not have been brought in Delaware.

*11-12.  None of the factors outlined above apply to this case, which (i) is not core, (ii) pre-existed the Chapter 11 Cases, (iii) was not brought to frustrate or evade the Chapter 11 cases, and (iv) involves facts and issues the Bankruptcy Court has not yet considered.

Rather than transfer this action to Delaware, a more efficient path forward—after denial of this transfer motion—may be for the Equitable Subordination Action to be transferred here for consolidation with this case.  *Cf. Document Techs., Inc. v. West*, No. 17 Civ. 2405, 2017 WL 1743938, at *3 (S.D.N.Y. Apr. 24, 2017) (denying transfer and noting movants' judicial economy argument "also works in the reverse" because all actions could "be consolidated in this district").  Debtors' own authority recognized that "adjudication of [an] equitable subordination claim . . . directly by the district court" can "promote judicial economy without interfering with the administration of the[ ] estates," and that while "equitable subordination is a remedy unique to bankruptcy" that Patriarch "could not have sought . . . , in the first instance, in the district court," it can subsequently be transferred here.  *In re Granite Partners*, 210 B.R. 508, 517 n.7, 518 (Bankr. S.D.N.Y. 1997).  Once Debtors' transfer motion is denied, both judicial economy and each of the pertinent transfer factors discussed above would appear to militate in favor of transferring the Equitable Subordination Action to this Court under 28 U.S.C. § 1412.[10]

## CONCLUSION

For the foregoing reasons, this Court should deny Debtors' motion to transfer this action.

---

[10]  *See, e.g.*, *ResCap*, 518 B.R. at 266-69 (transferring "common law contract" adversary proceeding from bankruptcy court to different district court to avoid an "inefficient use of judicial resources"); *GM Crocetti*, 2008 WL 4601278, at *5-6 (withdrawing reference to consolidate adversary proceeding with earlier-filed district court case because leaving matter in bankruptcy court "would be inefficient and counter productive").  In addition, "no material delay . . . would result from withdrawing the reference and transferring" the Equitable Subordination Action, "[g]iven the preliminary state" of that case.  *In re Nw. Airlines Corp.*, 384 B.R. 51, 61 (S.D.N.Y. 2008) (granting such motion).

Dated:   New York, New York
         December 6, 2019

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Randy Mastro*_____
    Randy M. Mastro
    Mark A. Kirsch
    Lawrence J. Zweifach
    Mary Beth Maloney
    Akiva Shapiro
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Defendants, Counterclaimants and Third-Party Plaintiffs Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Ark II CLO 2001-1, LLC, and Ark Investment Partners II, L.P.*