UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ZOHAR CDO 2003-1, LTD., *et al.*,

          *Plaintiffs*,

          -against-

PATRIARCH PARTNERS, LLC, *et al.*,

          *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

17cv307

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiffs and Counterclaim Defendants Zohar CDO 2003-1, Ltd. ("Zohar I"), Zohar II 2005-1, Ltd. ("Zohar II"), and Zohar III, Ltd. ("Zohar III" and, together with Zohar I and Zohar II, the "Zohar Funds") move under 28 U.S.C. §§ 1404(a) and 1412 to transfer this case to the United States District Court for the District of Delaware for referral to the Delaware Bankruptcy Court, where Zohar III's Chapter 11 bankruptcy proceedings are pending. (ECF No. 151.) Third-Party Defendants MBIA Inc., MBIA Insurance Corporation, Credit Value Partners, LP, Halcyon Capital Management LP, Coöperatieve Rabobank U.A., and Varde Partners, Inc. (collectively "Third-Party Defendants") join Zohar's motion. (ECF Nos. 154, 155.)

        Defendants, Counterclaimants, and Third-Party Plaintiffs Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, ("Patriarch") Octaluna LLC, Octaluna II LLC, Octaluna III LLC (together, "Octaluna"), Ark II CLO 2001-1, LLC, Ark Investment Partners II, L.P. (together, "Ark"), and Lynn Tilton ("Tilton" and, together with Patriarch, Octaluna, and Ark, the "Patriarch Parties") oppose the Zohar Funds' motion. (ECF No. 158.) For the reasons that follow, the Zohar Funds' motion is denied.

BACKGROUND

This Court assumes familiarity with its prior Opinion & Order and summarizes only the facts necessary to decide this motion. See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC, 286 F. Supp. 3d 634, 638 (S.D.N.Y. 2017).

Functionally, the Zohar Funds are three special purpose vehicles created by Tilton from the sale of collateralized loan obligations ("CLOs"). (Compl., ECF No. 1 ("Zohar Compl."), ¶ 29.) The Zohar Funds in turn use these funds to invest in distressed companies. (Zohar Compl. ¶¶ 40–45.) Due in part to the financial crisis in 2008, the Zohar Funds lost significant value. Since then, the parties have engaged in internecine litigation around the country. In the action at hand, the Zohar Funds and the Patriarch Parties accuse each other of wrongdoing. At bottom, the Zohar Funds allege that the Patriarch Parties engaged in a wide-ranging conspiracy to enrich themselves by pillaging the Zohar Funds' funds and impairing their assets, ultimately rendering them unable to repay investors. In response, Patriarch accuses the Zohar Funds and MBIA of concocting a scheme to wrest control of the portfolio companies from Patriarch and Tilton in an effort to replace lost revenues.

On January 16, 2017, the Zohar Funds filed the original complaint commencing this action against Patriarch, seeking declaratory judgment over ownership of the portfolio companies, damages from Patriarch Parties, and a RICO claim against the Patriarch Parties. (See generally Zohar Compl.) On November 27, 2017, the Patriarch Parties filed an answer, as well as counterclaims and a third-party complaint. (Answer, Counterclaims, and Third-Party Compl., ECF No. 88 ("Patriarch Compl.").) On December 29, 2017, this Court dismissed the Zohar Funds' RICO claim under Federal Rule of Civil Procedure 12(b)(6) and declined to exercise supplemental jurisdiction over the remaining claims. Zohar, 286 F. Supp. 3d at 657.

On March 11, 2018, Tilton caused Zohar III to commence chapter 11 in the United States District of Delaware Bankruptcy Court (the "Bankruptcy"). See In re Zohar III, Corp., No. 18-10512 (Bankr. D. Del.). To quell the sparring in bankruptcy court, the parties entered into a settlement agreement to monetize the Zohar Funds' interests in the portfolio companies. (Settlement Agreement, ECF No. 130-1, ¶¶ 8, 10–12.) The Settlement Agreement expired on September 30, 2019. (ECF No. 141, at 2.) The next day, Tilton filed an equitable subordination complaint in the Delaware Bankruptcy Court. (Decl. of Joseph M. Barry in Supp. of the Zohar Funds' Mot. to Transfer Case, ECF No. 157 ("Barry Decl."), Ex. 1 ("Subordination Compl.").) Thereafter, the Zohar Funds filed their motion to transfer the case, to which the Third-Party Defendants joined.

## DISCUSSION

I. Legal Standard

The Zohar Funds move to transfer this action to the District of Delaware under 28 U.S.C. § 1412 or, alternatively, under 28 U.S.C. § 1404(a). Section 1412 states that "[a] district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

II. The Applicable Transfer of Venue Statute

As an initial matter, this Court must determine which transfer of venue statute is appropriate. While some courts in this District have stated that the statues are functionally identical, see, e.g., Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I, 2015 WL 5257003, at *7

3

(S.D.N.Y. Sept. 9, 2015), there are material differences between Sections 1412 and 1404(a), Argosy Capital Grp. III, L.P. v. Triangle Capital Corp., 2019 WL 140730, at *5 (S.D.N.Y. Jan. 9, 2019). First, Section 1404(a) places a clear and convincing standard on the moving party, see N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113–14 (2d Cir. 2010), while Section 1412 only requires a preponderance of the evidence, see Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y. 2004). Second, Section 1412 presumes that venue is appropriate where the bankruptcy proceeding is pending. In re Manville Forest Prod. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990). Section 1404(a) gives the moving party no such advantage. Third, forum selection clauses are entitled to less weight under Section 1412. In re Iridium Operating LLC, 285 B.R. 822, 836 (S.D.N.Y. 2002) ("[A]lthough there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core."); see also Rescap Liquidating Trust v. PHH Mortg. Corp., 518 B.R. 259, 268 (S.D.N.Y. 2014) ("A number of courts in this District have held that when a proceeding is core, the public interest in centralizing bankruptcy proceedings always outweighs the public and private interests in enforcing a forum-selection clause, unless the core proceeding is inextricably intertwined with non-core matters."). Finally, Section 1404(a) contains the conjunctive "[f]or the convenience of parties and witnesses, in the interest of justice" while Section 1412 contains the disjunctive "in the interest of justice or for the convenience of the parties." (emphasis added). This difference eases the burden for a moving party under Section 1412, as only one standard would need to be met. ICICI Bank Ltd. v. Essar Glob. Fund Ltd., 565 B.R. 241, 257 (S.D.N.Y. 2017). Because of these differences, this Court must first determine whether transfer under Section 1412 is possible.

A. <u>Whether Section 1412 Applies</u>

The text of Section 1412 requires that the district court find that the case arises "under title 11" before addressing the convenience of the parties or the interests of justice. Quoting <u>Delaware Trust Co. v. Wilmington Trust, N.A.</u>, the Zohar Funds argue that an action can be transferred under Section 1412 where it is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 534 B.R. 500, 511 (S.D.N.Y. 2015) (quotation marks omitted). But the Zohar Funds cite the standard for invoking bankruptcy jurisdiction as opposed to the standard for transferring the case. <u>See</u> 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or <u>related to</u> cases under title 11." (emphasis added)). Indeed, <u>Delaware Transfer Co.</u> addressed "related to" jurisdiction, not transferability under Section 1412. <u>See</u> <u>Del. Tr. Co.</u>, 534 B.R. at 511.

Nevertheless, this has spawned some confusion among lower courts. <u>Compare, e.g.</u>, <u>Smartmatic USA Corp. v. Dominion Voting Sys. Corp.</u>, 2013 WL 5798986, at *6 (S.D.N.Y. Oct. 22, 2013) (transferring a case after only finding "related to" jurisdiction existed); <u>with</u>, <u>ICICI Bank</u>, 565 B.R. at 248 (requiring an action to be core to be transferred).[1] But transferring pursuant to Section 1412 on a bare finding that only "related to" jurisdiction existed is contrary to a plain reading of the statute. Section 1412's reach is narrower than bankruptcy jurisdiction as defined by Section 1334(b). While Section 1334(b) provides jurisdiction for all "civil

---

[1] Indeed, the Third Circuit has adopted such reasoning wholesale. <u>See</u> <u>O'Brien v. Gladstone</u>, 2014 WL 2965948, at *3 (D.N.J. July 1, 2014) ("While § 1412 speaks only of proceedings under the Bankruptcy Code, the Third Circuit has held that § 1412 is the appropriate method for transfer of cases that are 'related to' a bankruptcy proceeding." (citing <u>Mar. Elec. Co. v. United Jersey Bank</u>, 959 F.2d 1194, 1212 (3d Cir. 1991)). The Second Circuit has not addressed the issue.

proceedings arising under title 11, or arising in or related to cases under title 11," the language in Section 1412 is cabined to the transfer of "case[s] or proceeding[s] under title 11." (emphasis added). This Court presumes that Congress chose different language for a reason, and this Court must follow the statute as drafted. A bankruptcy judge in this District has come to a similar conclusion:

> I am not free to ignore the limiting language, or to treat section 1412 as though it includes extra language that Congress used in other sections of title 28 but that Congress did not include in section 1412 itself. Nor am I free to rewrite section 1412 based on arguments that it would make more sense if section 1412 had a broader application. The terms of section 1412 simply do not grant me the power to transfer a New York State litigation that is not a case or proceeding "under" the Bankruptcy Code.

Multibank, Inc. v. Access Glob. Capital LLC, 594 B.R. 618, 624 (Bankr. S.D.N.Y. 2018); see also Onewoo Corp. v. Hampshire Brands, Inc., 566 B.R. 136, 139–40 (Bankr. S.D.N.Y. 2017) (same).[2] Accordingly, this Court must determine whether this action "arises under" Title 11.

B. Whether this Action "Arises Under" Title 11

Actions arising under Title 11 are "any matter under which a claim is made under a provision of [T]itle 11." Delaware Tr. Co. v. Wilmington Tr., N.A., 534 B.R. 500, 511 (S.D.N.Y. 2015) (alteration in original) (quotation marks omitted).[3] A common practice in this District when determining whether a case may be transferred pursuant to Section 1412 is to look to whether the action is "core" or "non-core." See, e.g., ICICI Bank, 565 B.R. at 248; In re

---

[2] Several district courts outside of the Second Circuit have adopted the reasoning outlined in Multibank and Onewoo. See Williams v. Big Picture Loans, LLC, 2020 WL 1879675, at *3 (E.D. Va. Apr. 15, 2020); Fitzgibbon v. Radack, 597 B.R. 836, 840 (E.D. Va. 2019); Southstar Capital Grp., I, LLC v. 1662 Multifamily LLC, 2019 WL 3752892, at *3 (M.D. Fla. Aug. 8, 2019).

[3] This is distinguishable from "arising in" jurisdiction which covers claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy," Baker v. Simpson, 613 F.3d 346, 350 (2d Cir. 2010) (alteration in original), or "related to" jurisdiction which provides bankruptcy jurisdiction to any action if the "outcome might have any 'conceivable effect' on the bankrupt estate," Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011).

Northwest Airlines Corp., 384 B.R. 51, 60 n.1 (S.D.N.Y. 2008). While no court in this District has engaged in as substantive an analysis as Multibank, determining whether an action is core does not run afoul of Section 1412's requirement that the action arise "under title 11."[4]

Section 157(b)(2) sets forth a non-exhaustive list of "core proceedings." Proceedings that involves "substantive rights created by federal bankruptcy law" or proceedings that "would have no existence outside of the bankruptcy" are core proceedings. In re Robert Plan Corp., 777 F.3d at 596–97; see also 28 U.S.C. § 157(b) (defining bankruptcy jurisdiction, in part, as "all core proceedings arising under title 11"); MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108–09 (2d Cir. 2006) (core proceedings concern rights created by bankruptcy law, or that could arise only in a bankruptcy case). Conversely, a claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co., 464 B.R. 587, 591 (S.D.N.Y. 2012) (quotation marks omitted). In determining whether a proceeding is core, courts are mindful that "core proceedings should be given a broad interpretation that is close to or congruent with constitutional limits." U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n., Inc, 197 F.3d 631, 636–37 (2d Cir. 1999); see also In re CBI Holding Co., Inc., 529 F.3d 432, 460 (2d Cir. 2008) ("In crafting § 157, Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and intended that the 'core' jurisdiction would be construed as broadly as possible." (quotation marks omitted)).

---

[4] Technically, the definition of core is slightly broader than just actions arising under Title 11. See In re Robert Plan Corp., 777 F.3d 594, 596 (2d Cir. 2015) ("Core proceedings are those that are found to be "arising under" the Bankruptcy Code or 'arising in' a bankruptcy case." (emphasis added)). But to the extent this case falls within a delineated core proceeding under 28 U.S.C. § 157(b), it would arise under Title 11.

On their face, the Patriarch Parties' claims are not core proceedings under the contemplation of 28 U.S.C. § 157(b)(2). Their plethora of contract and tort claims do not owe their existence to the Bankruptcy Code. Perhaps recognizing that, the Zohar Funds aver that this action is core because of the degree to which they are related to the Bankruptcy. The Zohar Funds maintain that the Patriarch Parties' claims are so factually and legally connected to the Bankruptcy, that they are transformed into core proceedings under Section 157(b)(2)(A)—"matters concerning the administration of the estate" are core—and Section 157(b)(2)(O)—"other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . ." are core. And there are occasions where contract actions are so intertwined with a bankruptcy that they are deemed core.

The Second Circuit established a framework to determine whether a contract action is a core proceeding:

> (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The latter inquiry hinges on the nature of the proceeding. Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings (claim allowance), or (2) the proceedings directly affect a core bankruptcy function (contractual subordination agreements affecting priority of claims). Core bankruptcy functions of particular import to the instant proceedings include [f]ixing the order of priority of creditor claims against a debtor, plac[ing] the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and administer[ing] all property in the bankrupt's possession.

In re U.S. Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) (alterations in original) (quotation marks and citations omitted).

The contracts at issue here predate the Bankruptcy. Moreover, the disputes arising from those contracts also precede the Bankruptcy. Much of the alleged conduct occurred

between 2003 and 2015, while the Bankruptcy was commenced in 2018.  See In re Petrie Retail, Inc., 304 F.3d 223, 229 (2d Cir. 2002) ("The fact that the lease was executed pre-petition and that the dispute between [the parties] could arise outside of bankruptcy proceedings weighs against its core status."); Delaware Tr. Co., 534 B.R. at 516 (finding a case to be core because "although the contract in the present case preceded the bankruptcy, the dispute did not").  Accordingly, well-established Second Circuit precedent dictates that these facts alone weigh heavily against core status.

To rebut this presumption, the Zohar Funds argue that the congruence between this action and the Bankruptcy render the Patriarch Parties' claims core.  While the Zohar Funds do not divide their arguments into such, this Court curates the Zohar Funds' arguments into four general categories.  First, the Zohar Funds assert that the factual and legal circumstances are so intertwined that this matter is core.  The Zohar Funds points to similarities in the Patriarch Complaint and the Subordination Complaint.  Indeed, paragraphs in the Subordination Complaint are grafted verbatim from the Patriarch Complaint.  (Compare, e.g., Patriarch Compl. ¶ 154, with Subordination Compl. ¶ 174.)  Moreover, the "steal the equity" themes that pervade the Patriarch Complaint are infused in the Subordination Complaint.  Additionally, the Zohar Funds point to numerous claims that the Patriarch Parties also assert in the Bankruptcy.  For example, the Zohar Funds note that the Patriarch Parties' fraudulent inducement allegations concerning MBIA are also pleaded in the Bankruptcy.  (Compare Patriarch Compl. Counts 1–3, with Subordination Compl. ¶¶ 222–25.)

The similarities are apparent.  But those similarities alone does not alter the fact that the claims do not spring from Title 11.  Moreover, several parties in this action—Credit

9

Value Partners, LP, Halcyon Capital Management LP, Coöperatieve Rabobank U.A., and Varde Partners, Inc.—are not parties to the Bankruptcy.

The Zohar Funds' reliance on In re CBI Holdings Co. Inc., 529 F.3d 432 (2d Cir 2008), is misplaced. While the Second Circuit found that the "claims of negligence, breach of contract, and fraud [that were] based upon the same operative facts as the above core proceedings" were core, that was because those claims "were filed in response to [a party's] Proof of Claim." In re CBI Holding, 529 F.3d at 461 (quotation marks omitted). The Court of Appeals characterized those claims as core under Section 157(b)(2)(C) because they "'response[d] to a proof of claim which is, in essence, a counterclaim, [and thus] is a core proceeding.'" In re CBI Holdings, 529 F.3d at 462 (quoting Bank of Lafayette v. Baudoin, 981 F.2d 736, 741 (5th Cir. 1993)). However, the Zohar Funds do not rely on Section 157(b)(2)(C). Rather argue that this case is core under Sections 157(b)(2)(A) and 157(b)(2)(O). Nor could the Zohar Funds rely on Section 157(b)(2)(C), as that encompasses "counterclaims by the estate against persons filing claims against the estate." (emphasis added). Here, the Patriarch Parties— not the estate—bring claims.

Second, the Zohar Funds aver that determinations in this matter will both affect the estate and the determination of priorities among creditors. According to the Zohar Funds, this "concern[s] the administration of the estate" under Section 157(b)(2)(A). Most forcefully, the Zohar Funds points to Counts 21 and 22 of the Patriarch Complaint, which seek declaratory judgment over who owns and controls the portfolio companies. Because those portfolio companies are part of the bankruptcy estate, the Zohar Funds argue that any ruling by this Court concerns the administration of the estate and renders the action core. Further, the Patriarch Parties seek to unwind corporate transactions and reclaim equity in the portfolio companies.

(See Patriarch Compl. Counts 6–9.) In the Zohar Funds' view, any award damages—would affect the priority of creditors and the estate.

But that alone does not make this action core. At bottom, the causes of action are common law contract claims and tort and do not emanate from Title 11. Moreover, this Court has the power to stay these particular claims while the Bankruptcy proceeds to avoid the possibility of conflicting rulings. Further, to the extent that damages are awarded, the Bankruptcy Court could account for them when determining priorities among creditors. See ResCap Liquidating Tr., 518 B.R. at 264 ("If [Plaintiff] recovers damages, the award can be distributed by the bankruptcy court according to the Plan's provisions.").

In that regard, this case is similar to In re Orion Pictures Corp., where the Second Circuit rejected the argument that deciding contractual matters which may affect the estate automatically renders a matter core under Section 157(b)(2)(A). 4 F.3d 1095, 1102 (2d Cir. 1993). The Court of Appeals reasoned that this "approach [would] create[] an exception . . . that would swallow the rule[] [because] [a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus concern[s] its administration." In re Orion, 4 F.3d at 1102 (sixth alteration in original) (quotation marks omitted); see also In re Ames Dep't Stores, Inc., 2008 WL 7542200, at *7 (S.D.N.Y. June 4, 2008) ("Of course, a proceeding is not rendered core simply because it implicates property of a debtor's estate.") aff'd, 319 F. App'x 40 (2d Cir. 2009). Indeed, Orion cautioned that "[a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concern[s]' its 'administration.'" 4 F.3d at 1102. Applied here, this Court also concludes that the mere fact that this action may have a tangential effect on the estate is insufficient to render the action core.

Third, the Zohar Funds argue that several of the claims that the Patriarch Parties assert are in fact derivative and therefore belong to the estate. Specifically, Counts 4–9, 14, and 16–17 appear facially to assert claims premised on the diminution of value of the Zohar funds. Because these derivative claims would belong to the Zohar Funds and the Zohar Funds are in Chapter 11, those claims must be adjudicated in the Bankruptcy. See In re WorldCom, Inc., 323 B.R. 844, 857 (Bankr. S.D.N.Y. 2005) (holding a derivative action is property of the estate and could only be brought by the debtor). However, even if those claims are derivative, the Zohar Funds overlook the fact that the Patriarch Parties have not properly asserted them. That alone could warrant dismissal of those claims. See Schiff v. ZM Equity Partners, LLC, 2020 WL 5077712, at *11 (S.D.N.Y. Aug. 27, 2020).

Finally, the Zohar Funds argue that this litigation adversely impacts the Bankruptcy because it can interfere with the monetization process. Continuing that line of reasoning, the Zohar Funds assert that case is a "proceeding[] affecting the liquidation of the assets," rendering it core under Section 157(b)(2)(O). But any claims against the debtor would be subject to the automatic stay. Moreover, the Zohar Funds fail to explain how this litigation affects the monetization process. Hypothetically, if this Court were to determine that the Patriarch Parties were entitled to damages, that would not impede monetization in the Bankruptcy. Rather, the Patriarch Parties' claims may simply rise in priority. Accordingly, because this action does not arise under Title 11, transfer of venue under Section 1412 is not possible, and this Court applies Section 1404(a) to resolve the Zohar Funds' motion.

III.   Transferability

Under Section 1404(a), a court may transfer any civil action to any other district where the suit may have been initially brought or to any district to which all parties have

consented "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). As previously discussed, the party seeking transfer bears the burden of establishing that transfer is warranted by clear and convincing evidence. N.Y. Marine, 599 F.3d at 113–14. In other words, the movant must make "a strong showing that the balance of convenience and interest of justice weigh heavily in favor of transfer." U.S. Commodity Futures Trading Comm'n v. Wilson, 27 F. Supp. 3d 517, 537 (S.D.N.Y. 2014) (quotation marks omitted). "District courts have broad discretion in making determinations of convenience under Section 1404(a), and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). Because the Patriarch Parties do not consent to transfer, this Court must determine if this case could have initially been brought in the District of Delaware.

    A.  Whether this Case Could Have Been Brought in Delaware

For the Zohar Funds to have been able to file this action in Delaware, "the court must first determine whether venue is proper in the proposed transferee district." Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC, 2018 WL 357304, at *4 (S.D.N.Y. Jan. 9, 2018); accord Solar v. Annetts, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010). Additionally, the District of Delaware would need to have personal jurisdiction over all defendants.

The Patriarch Parties claim that this suit could not have been brought originally in the District of Delaware because Tilton would not have been subject to Delaware's personal jurisdiction. This argument is not persuasive. Tilton is the sole director or managing member of numerous Delaware entities involved in this action. (Opp'n, at 10; Patriarch Compl. ¶ 20.) Tilton used her positions within these entities to cause them to make investments. (Compl.

¶¶ 114–15.)  However, the Patriarch Parties aver that the mere transacting by Tilton in business in Delaware is insufficient to establish personal jurisdiction.

The Patriarch Parties are mistaken.  Delaware's long-arm statute provides for personal jurisdiction over any nonresident who "[t]ransacts any business or performs any character of work or service in the State [of Delaware]."  10 Del. C. § 3104(c)(1).  Moreover, "[a] manager . . . of a limited liability company may be served with process . . . in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company."  6 Del. C. § 18-109.4.  Tilton's actions fall squarely within the reach of these statutes.  Accordingly, Delaware has personal jurisdiction over Tilton.

Next, the Patriarch Parties challenge venue.  Since Tilton is not a resident of Delaware, the Zohar Funds cannot rely on 28 U.S.C. § 1391(b)(1), and because the Southern District of New York was a proper venue, the Zohar Funds cannot utilize 28 U.S.C. § 1391(b)(3).  This leaves 28 U.S.C. § 1391(b)(2) which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  While the Zohar Funds alleged that a substantial portion of the events at issue occurred in this District, (Zohar Compl. ¶ 26), it is clear that much of the property at issue is located in Delaware.  Indeed, that is where the bankruptcy estate sought chapter 11, and Counts 21 and 22 deal with ownership of the Delaware entities.  Accordingly, this Court finds that this action could have been brought in Delaware and turns to whether the convenience of parties and interests of justice support transfer.

B. Factors

Courts in the Second Circuit consider several factors on a motion to transfer venue, including:

> (1) the plaintiff's choice of forum, (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of the circumstances.

Ritchie Cap. Mgmt., L.L.C. v. BMO Harris Bank, N.A., 2015 WL 1433320, at *7 (S.D.N.Y. Mar. 30, 2015) (quotation marks omitted). There is "no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Instead, in light of a district court's "broad discretion" in deciding whether to transfer venue, it "must make [its] determination[] upon notions of convenience and fairness on a case-by-case basis." Citicorp Leasing, Inc. v. United Am. Funding, Inc., 2004 WL 102761, at *2 (S.D.N.Y. Jan. 21, 2004). In considering these factors, the court may consider factual material outside the pleadings. Mohsen v. Morgan Stanley & Co., 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013); Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC, 2018 WL 357304, at *4 (S.D.N.Y. Jan. 9, 2018).

i. Plaintiff's Choice of Forum

A plaintiff's choice of forum is "presumptively entitled to substantial deference," Gross v. British Broad. Corp., 386 F.3d 224, 230 (2d Cir. 2004), although less so "where the connection between the case and the chosen forum is minimal," Ritchie Capital Mgmt., 2015 WL 1611391, at *3. But this is not a mine-run case. While the Zohar Funds initially filed this suit, all of their claims have been dismissed and the Patriarch Parties assert counterclaims and

impleaded the Third-Party Defendants. Thus, even though initially the Zohar Funds were plaintiffs, they are now effectively defendants. Ironically, while the Zohar Funds chose this forum, they now seek transfer to Delaware. Thus, no parties' initial choice would be disturbed. But there is a genuine connection to a New York forum, as the agreements at issue contain a non-exclusive forum selection clause in which the parties consented to jurisdiction and venue in the New York courts. Many of the parties reside in New York and much of the events at issue occurred here. While the Zohar Funds argue that an intermediary event—the Bankruptcy—changes the calculus, this Court does not view that proceeding as tipping the scales.

Additionally, the parties' forum-selection clause militates against transfer. Because "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," and "the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 (2013) (alteration in original) (quotation marks omitted). In several of the agreements at issue, the parties agreed to venue in the Southern District of New York. (See Barry Decl., Exs. 4, 5.) The forum-selection clauses coupled with the fact that the Zohar Funds chose the Southern District of New York, caution against transfer.

   ii. Convenience to the Witnesses

In considering the convenience of the witnesses, a court "must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014); see also Power Play 1 LLC, 2018 WL 357304, at *5 (same). Here, the Zohar Funds do not claim

that any witnesses would be inconvenienced. And the pleadings indicate that most of the pertinent witnesses are located in New York. However, this Court is also aware that many of the parties in this action are actively engaged in the Bankruptcy. As such, this factor is neutral.

### iii. Convenience of the Parties

The convenience of the parties weighs in favor of transfer when it would increase convenience for the movant without decreasing convenience for the non-movant. Liberty Mut. Ins. Co., 17 F. Supp. 3d at 399. However, it "does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff." Kiss My Face Corp. v. Bunting, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003). In considering this factor, courts "often look to the parties' principal places of business and the location of their offices." Royal & Sun Alliance Ins., PLC v. Nippon Express, USA, Inc., 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016).

The Zohar Funds rely primarily on the Bankruptcy to argue that transfer would convenience the parties because it would be much easier to litigate all the issues in a single forum. Moreover, the Zohar Funds maintain that the Patriarch Parties cannot claim inconvenience because Tilton chose Delaware for the Bankruptcy.

While many of the parties are actively engaged in the Bankruptcy, not all are. Moreover the claims in this action are not core and are—at best—related to the bankruptcy. Additionally, most of the parties have principal places of business in New York. (Patriarch Compl. ¶¶ 2–21.) Accordingly, this factor militates against transfer.

### iv. Locus of Operative Facts

"In determining the locus of operative facts for a breach of contract claim, a court typically considers the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." Power Play 1 LLC, 2018

WL 357304, at *6 (quotation marks omitted).  Courts in this Circuit have held that the locus of operative facts for conversion claims "lies [in] the district where the alleged . . . conversion occurred."  Khankhanian v. Khanian, 2017 WL 1314124, at *5 (S.D.N.Y. Apr. 6, 2017).

The Zohar Funds are only able to identify two connections to Delaware: the Bankruptcy and the fact that some of the entities were incorporated in Delaware.  Otherwise, events giving rise to this action occurred in New York.  For example, a significant portion of the Patriarch Parties' claims revolve around MBIA's fraudulent inducement of Tilton to purchase notes.  (See Patriarch Compl. Counts 3, 7–13.)  MBIA has its principal place of business in New York, (Patriarch Compl. ¶ 15), and the Patriarch Parties allege that the conduct at issue happened in New York, (see Patriarch Compl. ¶¶ 91–107).  Moreover, in its initial pleading, the Zohar Funds alleged that the Southern District of New York was the "district in which a substantial part of the actions giving rise to the claims occurred."  (Zohar Compl. ¶ 26.)  Therefore, this factor militates against transfer.

      v.  Remaining Factors

Neither party addresses the location of relevant documents.  Indeed, it would hardly be dispositive considering "the conveniences afforded by the internet and electronic discovery mitigate whatever burden would ordinarily be imposed on the [parties] from litigating in another state."  Power Play 1 LLC, 2018 WL 357304, at *6.  Because there is no indication that any witness "will be unwilling to testify voluntarily," this Court finds that this factor is irrelevant.  Rosen v. Ritz-Carlton Hotel Co. LLC, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015).  Nor does this Court believe that a Delaware federal court is incapable of applying New York substantive law, especially in a straightforward tort and breach of contract action.  See Flowserve Corp. v. BMCE, Inc., 2006 WL 2927176, at *4 (S.D.N.Y. Oct. 12, 2006).  On the

other hand, trial efficiency and the interests of justice do not weigh in favor of transfer. While the Bankruptcy court is no doubt familiar with its action, this Court has delved into the pleadings and decided various motions. See, e.g., Zohar, 286 F. Supp. 3d at 634.

When weighing all of the pertinent factors, the Zohar Funds fail to demonstrate by clear and convincing evidence that transfer is warranted for the convenience of the parties and witnesses and in the interests of justice.

## CONCLUSION

For the foregoing reasons, the Zohar Funds' motion to transfer this case is denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 151 and 154.

Dated: September 18, 2020  
       New York, New York

SO ORDERED:

_____  
WILLIAM H. PAULEY III  
U.S.D.J.