UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Zohar CDO 2003-1, Ltd.; Zohar II 2005-1, Ltd.; and Zohar III, Ltd., | |
| Plaintiffs and Counterclaim Defendants, | |
| v. | |
| Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; Patriarch Partners XV, LLC; Octaluna LLC; Octaluna II LLC; Octaluna III LLC; Ark II CLO 2001-1, LLC; Ark Investment Partners II, L.P.; and Lynn Tilton, | No. 1:17-cv-00307 (WHP) |
| Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs, | |
| v. | |
| MBIA INSURANCE CORPORATION; MBIA, INC.; ALVAREZ & MARSHAL ZOHAR MANAGEMENT, LLC; U.S. BANK, N.A.; CREDIT VALUE PARTNERS, LP; HALCYON CAPITAL MANAGEMENT LP; COÖPERATIEVE RABOBANK U.A., and VÄRDE PARTNERS, INC., | |
| Third-Party Defendants. | |

**THIRD-PARTY DEFENDANTS MBIA INSURANCE CORPORATION'S
AND MBIA INC.'S MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THIRD-PARTY COMPLAINT**

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281

*Attorneys for Third-Party Defendants
MBIA Inc. and MBIA Insurance Corporation*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

GLOSSARY OF DEFINED TERMS ........................................................ vii

PRELIMINARY STATEMENT ................................................................1

RELEVANT FACTS ..................................................................................2

    A.    The Zohar Funds And Defendants' Contractual Rights And Remedies............................................................................................2

    B.    Tilton And Her Affiliates ................................................................4

    C.    The Parties' Unsuccessful Workout Negotiations ........................4

    D.    The Involuntary Zohar I Bankruptcy ............................................5

    E.    The Zohar I Foreclosure Auction...................................................6

    F.    Plaintiffs' Additional Prepetition Litigation With The Zohar Funds...........7

    G.    The Zohar II And Zohar III Defaults And Delaware Bankruptcy Cases ................................................................................................8

ARGUMENT ..............................................................................................9

    I.    THE THIRD-PARTY COMPLAINT RESTS ON CONCEDED CLAIMS OF EQUITY OWNERSHIP AND IMPROPERLY ASSERTS MOOTED CLAIMS ...................................................10

    II.    THE THIRD PARTY COMPLAINT FAILS TO STATE ANY CLAIMS FOR RELIEF ..........................................................................12

        A.    Counts 1-3 Fail:  MBIA's Conditional Proposals Are Not Actionable...................................................................................12

        B.    Counts 5 And 20 Fail:  MBIA Did Not Owe, Breach, Or Assist In Any Breach Of Fiduciary Duties To The Tilton Parties ............................17

        C.    Counts 6-10, 12-13 Fail:  The Zohar I Auction Was Authorized By Contract And Court Order And Does Not Give Rise To Any Claims ........................................................................................20

            1.    The Zohar I Auction was commercially reasonable. .....................20

            2.    The Zohar I Auction Did Not Interfere With Tilton's Property Or Unjustly Enrich MBIA...............................................21

        D.    Count 17 Fails:  MBIA Did Not Interfere With The AMZM CMAs ........23

**Page**

III.    ALL CLAIMS AGAINST MBIA INC. FAIL AND SHOULD BE
        DISMISSED ...............................................................................................................24

CONCLUSION...................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. HSBC Bank USA, Nat'l Ass'n (In re Adelphia Recovery Tr.),*
  634 F.3d 678 (2d Cir. 2011)......................................................................... 10

*Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.,*
  669 F. Supp. 2d 430 (S.D.N.Y. 2009)......................................................... 13

*Apace Commc'ns, Ltd v. Burke,*
  17 F. Supp. 3d 238 (W.D.N.Y. 2014).......................................................... 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................ 9, 22

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007).............................................................................. 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................ 9

*Beninati v. FDIC,*
  55 F. Supp. 2d 141 (E.D.N.Y. 1999) ........................................................... 21

*Biosafe-One, Inc. v. Hawks,*
  639 F. Supp. 2d 358 (S.D.N.Y. 2009)........................................................... 21

*Bui v. Indus. Enters. of Am., Inc.,*
  594 F. Supp. 2d 364 (S.D.N.Y. 2009)....................................................... 12-13

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,*
  491 B.R. 335 (S.D.N.Y. 2013)...................................................................... 10

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.,*
  952 N.E.2d 995 (N.Y. 2011).......................................................................... 15

*Chambers v. TimeWarner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)............................................................................ 2

*Cohen v. BMW Invs. L.P.,*
  144 F. Supp. 3d 492 (S.D.N.Y. 2015)........................................................ 21-22

*DDJ Mgmt., LLC v. Rhone Grp. LLC,*
  931 N.E.2d 87 (N.Y. 2010)............................................................................ 15

**Page(s)**

*DiPippo v. Cnty. of Putnam, 17-cv-7948*,
   2019 WL 1004152 (S.D.N.Y. Feb. 28, 2019) ........................................................... 24

*EBC I, Inc. v. Goldman Sachs & Co.*,
   832 N.E.2d 26 (N.Y 2005) ..................................................................................... 17

*Emergent Cap. Invs. Mgmt., LLC v. Stonepath Grp., Inc.*,
   343 F.3d 189 (2d Cir. 2003) ................................................................................... 15

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................... 13

*Ferolito v. Menashi*,
   918 F. Supp. 2d 136 (E.D.N.Y. 2013) ..................................................................... 14

*Foster v. Churchill*,
   665 N.E.2d 153 (N.Y. 1996) ................................................................................... 23

*Guo Hua Ke v. Morton*,
   No. Civ. 8671, 2012 WL 4715211 (S.D.N.Y. Sept. 30, 2012) ........................... 9-10

*Hausler v. JP Morgan Chase Bank, N.A.*,
   127 F. Supp. 3d. 17 (S.D.N.Y. 2015) ...................................................................... 10

*Henneberry v. Sumitomo Corp. of Am.*,
   415 F. Supp. 2d 423 (S.D.N.Y. 2006) ..................................................................... 13

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000) ....................................................................................... 13

*JP Morgan Chase Bank v. Winnick*,
   350 F. Supp. 2d 393 (S.D.N.Y. 2004) ..................................................................... 16

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009) ..................................................................... 22

*Kolbeck v. LIT Am., Inc.*,
   939 F. Supp. 240 (S.D.N.Y. 1996) .......................................................................... 19

*Kottler v. Deutsche Bank AG*,
   607 F. Supp. 2d 447 (S.D.N.Y. 2009) ..................................................................... 17

*LaMonica v. Tilton)*,
   No. 18-AP-1021 (Bankr. S.D.N.Y. July 6, 2020) ...................................................... 1

*Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Cap., Inc.*,
   No. 14 Civ. 10143, 2015 WL 7730980 (S.D.N.Y. Nov. 24, 2015) .................... 23, 24

**Page(s)**

*Matsumura v. Benihana Nat. Corp.*,
No. 06 Civ. 7609, 2010 WL 882968 (S.D.N.Y. Mar. 5, 2010) .........................................18-19

*McBeth v. Porges*,
171 F. Supp. 3d 216 (S.D.N.Y. 2016).................................................................................... 15

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*,
476 F. Supp. 2d 414 (S.D.N.Y. 2007)..................................................................................24-25

*Munno v. Town of Orangetown*,
391 F. Supp. 2d 263 (S.D.N.Y. 2005).................................................................................... 3

*Murray v. Xerox Corp.*,
811 F.2d 118 (2d Cir. 1987).................................................................................................... 13

*Nafziger v. McDermott Int'l Inc.*,
467 F.3d 514 (6th Cir. 2006) .................................................................................................. 12

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013).................................................................................................... 10

*Nat'l Westminster Bank, U.S.A. v. Ross*,
130 B.R. 656 (S.D.N.Y. 1991)................................................................................................ 20

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
973 N.E.2d 735 (N.Y. 2012).................................................................................................. 18

*OFSI Fund II, LLC v. Can. Imperial Bank of Com.*,
920 N.Y.S.2d 8 (App. Div. 1st Dep't 2011) .......................................................................... 18

*Patriarch Partners XV, LLC v. U.S. Bank N.A.*,
No. 16-cv-7128, 2017 WL 3822603 (S.D.N.Y. Aug. 28, 2017).....................................*passim*

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006)..................................................................................... 19

*River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*,
743 N.Y.S.2d 870 (App. Div. 1st Dep't 2002) ...................................................................... 16

*Samuel M. Feinberg Testamentary Tr. v. Carter*,
652 F. Supp. 1066 (S.D.N.Y. 1987)........................................................................................ 19

*Schwartz v. Cap. Liquidators, Inc.*,
984 F.2d 53 (2d Cir. 1993)...................................................................................................... 23

*SNS Bank N.V. v. Citibank, N.A.*,
777 N.Y.S.2d 62 (App. Div. 1st Dep't 2004) ........................................................................ 18

**Page(s)**

*Sumner v. Extebank*,
  452 N.Y.S.2d 873 (App. Div. 1st Dep't 1982), *aff'd as modified*, 462 N.E.2d 704
  (N.Y. 1983) ............................................................................................................... 20

*Tears v. Boston Sci. Corp.*,
  344 F. Supp. 3d 500 (S.D.N.Y. 2018) ..................................................................... 10

*Ventur Grp., LLC v. Finnerty*,
  892 N.Y.S.2d 69 (App. Div. 1st Dep't 2009) ......................................................... 15

*Vigilant Ins. Co. v. Hous. Auth. of El Paso, Tex.*,
  660 N.E.2d 1121 (N.Y. 1995) .................................................................................. 21

*Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*,
  No. CA-12247, 2016 WL 6248461 (Del. Ch. Oct. 26, 2016)............................ 7, 20

*Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*,
  No. CA-12946 (Del. Ch. Dec. 1, 2020) ................................................................ 1, 2

*Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*,
  No. CA-12946, 2017 WL 5956877 (Del. Ch. Nov. 30, 2017) .............. 7, 15, 20, 22

## Rules and Regulations

Fed. R. Civ. P. 9(b).................................................................................................... 10

N.Y. U.C.C. § 9-227(c)(1) (McKinney 2016 & Supp. 2020) ....................................... 20

## GLOSSARY OF DEFINED TERMS

| Defined Term | Definition |
|---|---|
| "AMZM" | Alvarez & Marsal Zohar Management, LLC |
| "AMZM CMAs" | Collectively, the Collateral Management Agreement among Zohar I and AMZM, dated March 3, 2016, and the Collateral Management Agreement among Zohar II and AMZM, dated March 3, 2016 |
| "Auction Action" | Patriarch Partners XV, LLC v. U.S. Bank Nat'l Ass'n, No. 16-cv-7128 (S.D.N.Y. Sept. 13, 2016) |
| "Ark II" | Ark II CLO 2001-1, LLC |
| "AIP" | Ark Investment Partners II, L.P. |
| "Ark Entities" | Collectively, Ark II CLO 2001-1, LLC and Ark Investment Partners II, L.P. |
| "Collateral" | Assets belonging to the Zohar Funds that serve as collateral for the secured notes issued to investors, as defined in the Indentures |
| "Collateral Management Agreements" | Collectively, the Collateral Management Agreement agreed to among Zohar I and Patriarch VIII, dated November 13, 2003, and the Collateral Management Agreement agreed to among Zohar II and Patriarch XIV, dated January 12, 2005 |
| "Controlling Party" | MBIA Insurance Corp., as defined in the Indentures |
| "Coverage Tests" | Certain covenants set forth in the Indentures for the protection of the Secured Parties |
| "Credit Enhancement Liabilities" | MBIA's right to reimbursement for any Policy payment |
| "Credit Enhancer" | MBIA Insurance Corp., as defined in the Indentures |
| "Delaware Bankruptcy Court" | The United States Bankruptcy Court for the District of Delaware |
| "Delaware 225 Action" | The expedited special proceeding brought in the Delaware Court of Chancery pursuant to Delaware Corporation Law § 225 and captioned as Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc., No. CA-12946 |

| Defined Term | Definition |
|---|---|
| **"Indentures"** | Collectively, the respective trust indentures executed in connection with Zohar I and Zohar II |
| **"MBIA"** | MBIA Insurance Corporation |
| **"MBIA Defendants"** | Collectively, MBIA Insurance Corporation and MBIA Inc. |
| **"New York Bankruptcy Court"** | The United States Bankruptcy Court for the Southern District of New York |
| **"Note Maturity Date"** | November 20, 2015 payment date required for all outstanding principal and interest under the Zohar I Class A notes |
| **"Octaluna Entities"** | Collectively, Octaluna, LLC; Octaluna II, LLC; and Octaluna III, LLC |
| **"Patriarch VIII"** | Patriarch Partners VIII, LLC |
| **"Patriarch XIV"** | Patriarch Partners XIV, LLC |
| **"Patriarch XV"** | Patriarch Partners, XV, LLC |
| **"Patriarch Entities"** | Collectively, Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; and Patriarch Partners XV, LLC |
| **"Policies"** | Collectively, the Zohar I Policy and the Zohar II Policy |
| **"Portfolio Companies"** | Collectively, the companies in which the Zohar Funds held debt and equity interests |
| **"Settlement Agreement"** | The settlement agreement among the Zohar Fund Debtors, the Tilton Parties, MBIA, and the Zohar III Noteholders and approved by the Delaware Bankruptcy Court on May 21, 2018, in *In re Zohar III, Corp.*, No. 18-10512 (Bankr. D. Del.), ECF No. 266-1 |
| **"Third-Party Plaintiffs"** | Collectively, Ms. Tilton, the Patriarch Entities, the Octaluna Entities, and the Ark Entities |
| **"Tilton"** | Lynn Tilton |
| **"Tilton Parties"** | Collectively, Ms. Tilton, the Patriarch Entities, the Octaluna Entities, and the Ark Entities |

| **Defined Term** | **Definition** |
|---|---|
| **"Transaction Documents"** | Collectively, the agreements and documents governing Zohar I and Zohar II, as defined in their respective Indentures |
| **"Trustee"** | U.S. Bank, as the Indenture Trustee of the Zohar Funds |
| **"U.S. Bank"** | U.S. Bank National Association, in its capacity as trustee under each of the Indentures |
| **"Westchester Action"** | *Tilton v. MBIA Inc.*, Index No. 68880/15 (Sup. Ct. Westchester Cnty.) |
| **"Zohar I"** | Zohar CDO 2003-1, Limited |
| **"Zohar II"** | Zohar II 2005-1, Ltd. |
| **"Zohar III"** | Zohar III, Ltd. |
| **"Zohar I Bankruptcy"** | The involuntary bankruptcy petition filed in the United States Bankruptcy Court for the Southern District of New York jointly administered as In re Zohar CDO 2003-1, Ltd., No. 15-23680 (Bankr. S.D.N.Y. Nov. 22, 2015) |
| **"Zohar Bankruptcy Cases"** | Collectively, the bankruptcy cases jointly administered as *In re Zohar III, Corp.*, No. 18-10512 (Bankr. D. Del.) |
| **"Zohar CLOs" or "Zohar Funds"** | Collectively, Zohar I, Zohar II, and Zohar III |
| **"Zohar I Policy"** | Financial guaranty insurance policy for the benefit of the holders of the Zohar I Class A-1 and Class A-2 notes, but not the Class A-3 notes |
| **"Zohar II Policy"** | Financial guaranty insurance policy for the benefit of the holders of the Zohar II Class A-1, Class A-2 notes, and Class A-3 notes |

MBIA and MBIA Inc. respectfully submit this memorandum of law in support of their motion to dismiss the Third-Party Complaint with prejudice.

## PRELIMINARY STATEMENT

The Third-Party Complaint is a baseless and stunning narrative of counterfactual, revisionist history. Lynn Tilton oversaw the decline of the Zohar Funds while siphoning hundreds of millions of dollars for her personal benefit from their debt and equity asset portfolio. For years, Tilton concealed her fraud and self-dealing from MBIA, relying on its $1 billion in financial guaranty payments to make investors whole. A litigation machine funded by ill-gotten gains and unburdened by facts, Tilton blames others for the consequences of her own malfeasance while simultaneously delaying and obstructing court proceedings that threaten to reveal the extent of her wrongdoing. The day of reckoning, however, is coming. A New York bankruptcy court found that Tilton breached her fiduciary duties to one of the Zohar portfolio companies and fraudulently attempted to enrich herself at the expense of the company and its creditors. *See In re Transcare* (LaMonica v. Tilton), No. 18-AP-1021 (Bankr. S.D.N.Y. July 6, 2020), ECF No. 138. The Delaware Court of Chancery also recently entered a final judgment repudiating Tilton's claims of equity ownership on which the Third-Party Complaint is premised. *See Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, No. CA-12946 (Del. Ch. Dec. 1, 2020).

The governing contracts and documents integral to the Third-Party Complaint utterly refute the Tilton Parties' claims. MBIA owed no duties to Tilton, and at all times acted in good faith and within its contractual and legal rights. Tilton's central thesis that MBIA conspired with all of the other Zohar stakeholders for the privilege of paying out nearly $1 billion and stealing equity assets which Tilton herself has now renounced far exceeds reasonable plausibility. The continued pendency of this action remains a jaw-dropping display of consummate *chutzpah*. The Third-Party Complaint should be dismissed for these reasons.

*First,* all of Tilton's claims fail because they are predicated on her now-conceded equity ownership. Tilton has expressly abandoned her claim of equity ownership and should be estopped from continuing to seek the relief sought in the Complaint based on that same ownership claim. *See infra* at Point I. Further, Tilton's declaratory judgment claims are moot. *See id.*

*Second*, all of MBIA's complained-of actions were authorized by the governing Zohar transaction documents and performed by MBIA in accordance with applicable law and on a commercial, good-faith, arm's-length basis. Tilton's claims of fraud, negligent misrepresentation and promissory estoppel all boil down to nothing more than failed, arm's-length settlement negotiations; the alleged promises made by MBIA were plainly non-binding proposals contingent on contracts that never materialized. MBIA's alleged statements were not false statements of fact, and Plaintiffs could not have justifiably relied on them as a matter law. *See infra* Point II.A. Similarly, allegations regarding MBIA's exercise of its contractual remedies in directing the Zohar I foreclosure auction and appointing AMZM to serve as collateral manager cannot sustain Tilton's claims for fiduciary duty, breach of contract, conversion, violations of the Uniform Commercial Code, or tortious interference. *See infra* Points II.B-II.D.

*Third*, the Third-Party Complaint fails to allege facts supportive of any claims against MBIA Inc. *See infra* Point III.

## RELEVANT FACTS[1]

### A.     The Zohar Funds And Defendants' Contractual Rights And Remedies

The Zohar Funds are three collateral loan obligation funds formed by Tilton in 2003, 2005, and 2007, respectively. *See* Third-Party Compl. ("TPC") ¶¶ 39, 42. The Zohar Funds issued notes

---

[1]    In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the facts alleged in the complaint and all documents attached to the complaint as exhibits or incorporated by reference in or integral to the complaint without converting the motion to a motion for summary judgment. *Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002). The court also

to investors in exchange for cash, which they used to acquire Collateral assets that, in turn, were intended to generate cash flow for payments of principal and interest owed by the Zohar Funds on their investors' notes.  *Id.* ¶¶ 35, 47-48.  These Collateral assets include loans to and equity interests in the Zohar Funds' Portfolio Companies.  *Id.* ¶¶ 40, 49-50.  Pursuant to their respective trust Indentures, the Zohar Funds each granted a lien on all of their property to U.S. Bank, as Trustee. *Id.* ¶¶ 17, 25; *see* Exs. A-B (Indentures) § 3.2.

MBIA is a monoline insurance company that acted as the Credit Enhancer to Zohar I and Zohar II (but not Zohar III).  *See* TPC ¶ 46.  In that capacity, MBIA issued financial guaranty Policies for the benefit of senior Zohar noteholders. *Id.*  These Policies guaranteed that scheduled interest and principal would be paid to the insured noteholders by MBIA if Zohar I or Zohar II defaulted.  *Id.*  All outstanding principal and interest owed on the Zohar I Class A notes was due to be repaid on November 20, 2015. *Id.* ¶¶ 104, 108.  The Class A notes issued by Zohar II matured on January 20, 2017.  *Id.* ¶¶ 108, 133.  MBIA Inc. is MBIA's parent company.  *Id.* ¶ 16.

As the Credit Enhancer and guarantor assuming the risk of payment defaults by Zohar I and Zohar II, MBIA is referred to in the Indentures as the Controlling Party and possesses certain exclusive rights and powers.  Ex. A (Zohar I Indenture) at 20-21, 96-101, 199; Ex. B (Zohar II Indenture) at 20, 110-115, 199, 213.  Upon payment under the Policies, MBIA became subrogated to the insured noteholders and also became the senior secured creditor with payment rights senior in priority to each class of notes.  TPC ¶ 106; Exs. A-B (Indentures) § 16.5.  MBIA also gained the right to remove Tilton as collateral manager for Zohar I and Zohar II.  Exs. C-D (Collateral

---

"may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.'"  *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).  All of the exhibits attached to the Declaration of Joshua P. Arnold, dated December 22, 2020, and referenced herein as "Ex. __," are documents referenced in and integral to the Third-Party Complaint, or they are court filings of which the Court may take judicial notice.

Management Agreements) § 5.5.  The Indentures further empower MBIA to recover amounts paid under the Policies by monetizing the Collateral, including by directing the Trustee to sell the Collateral "in any manner permitted by law."  Exs. A-B §§ 5.4, 5.13, 5.17.  Significantly, Section 13.2(a) of the Indentures states that MBIA has no obligation or duties to any other Zohar constituents:

> [MBIA] *shall not have any obligation or duty to any Person* or to consider *or take into account the interests of any Person and shall not be liable to any Person for any action taken* by it or *at its direction* or any failure by it to act or to direct that an action be taken, *without regard to whether such action or inaction benefits or adversely affects any other Secured Party*, the Credit Enhancer, the Issuer, *or any other Person.*  Exs. A-B § 13.2(a).

### B.  **Tilton And Her Affiliates**

Plaintiff Lynn Tilton is the founder, principal owner, and sole manager of the Patriarch Entities.  TPC ¶¶ 1-11.  The Patriarch Entities served as collateral managers for the Zohar Funds until March 2016, when they resigned and MBIA and the Zohar III Controlling Class selected AMZM to replace them.  *Id.* ¶ 23; Exs. E-F.  The Patriarch Entities are the managing members of the Octaluna Entities, through which Tilton purports to hold the Preference Shares in, and the Class B notes issued by, each of the Zohar Funds.  TPC ¶¶ 3-5, 9.  Tilton was also the Funds' sole director from January 2017 until May 2018, and holds the Zohar I Class A-3 notes.  *Id.* ¶¶ 12, 57, 102.

### C.  **The Parties' Unsuccessful Workout Negotiations**

In 2012, Tilton determined that Zohar I was not likely to satisfy its note payment obligations by the Note Maturity Date.  TPC ¶ 91.  Over the next several years, Tilton held discussions with MBIA and the Zohar I noteholders regarding a possible restructuring of the Zohar Funds, but no agreement was reached.  TPC ¶¶ 91-94.  On October 15, 2015, in anticipation of Zohar I's November 20, 2015 note payment default, MBIA proposed terms for a possible Zohar refinancing transaction.  TPC ¶ 120; Ex. G.  On October 22, 2015, Patriarch made a counter

proposal, to which MBIA responded on October 24, 2015.  Exs. H-I.  In its response to Patriarch's counter-proposal, MBIA stated that "as long as Patriarch is in full compliance with this [proposed] agreement," it would forebear on exercising its contractual remedy to remove Patriarch as collateral manager, and Tilton and Patriarch would retain any rights held with respect to Zohar Funds or Portfolio Companies, as applicable.  TPC ¶ 120; Ex. I.  Significantly, both MBIA's and Patriarch's written proposals expressly stated that they were non-binding and subject to further negotiation and execution of final documentation.  Exs. G-I.  The parties never reached an agreement on any transaction. TPC ¶ 106.  On November 2, 2015, Tilton sued the MBIA Defendants alleging they induced her to purchase the Zohar I A-3 Notes.  TPC ¶ 98.[2]

As anticipated, on November 20, 2015, Zohar I defaulted on its note payment obligations. TPC ¶ 106.  MBIA paid $149 million under the Zohar I Policy, making whole the senior insured noteholders.  *Id.* ¶¶ 106, 108.  As a result, MBIA became subrogated to the rights of the senior noteholders and entitled to reimbursement for its Policy payment before Zohar I would distribute funds to Tilton's interests.  TPC ¶ 106; Ex. A § 16.5.  MBIA also became entitled under the Indenture to direct the liquidation of Zohar I's Collateral.  *Id.* ¶ 144.

### D.    The Involuntary Zohar I Bankruptcy

On November 22, 2015, two days after Zohar I's note payment default, Patriarch XV, as holder of the Zohar I A-3 notes, commenced an involuntary bankruptcy against Zohar I in the New York Bankruptcy Court.  TPC ¶ 121.  MBIA and Zohar I's then-directors moved to dismiss the involuntary petition, and an evidentiary hearing was held on their motions on February 1, 2016. *Id.*  At one point during the hearing, the Honorable Robert D. Drain adjourned the proceedings and ordered the parties to meet and discuss a potential consensual resolution where Tilton would resign

---

[2]    *See also Tilton v. MBIA Inc.*, Index No. 68880/15 (Sup. Ct. Westchester Cnty.); Opinion & Order, *Tilton v. MBIA Inc.*, Case No. 1:19-cv-09733-WHP (S.D.N.Y. Sept. 18, 2020).

and be replaced as collateral manager for all three of the Zohar Funds. *Id.*; Ex. J at 128:1–129:7. Under Judge Drain's contemplated resolution, Tilton would be required to provide the successor collateral manager and MBIA with adequate financial information about the Zohar Collateral and the Portfolio Companies. *Id.* Judge Drain acknowledged, however, that the parties had not yet committed to terms and that further mediation might be needed to reach a mutual resolution. *Id.* at 129:14–130:3.

As both MBIA and Tilton represented in submissions to the New York Bankruptcy Court, the parties met once on February 3, 2016 and exchanged proposed term sheets without agreement on a resolution. Ex. K-M. Rather than continue the Zohar I Bankruptcy under court oversight, Tilton voluntarily and unilaterally provided notice that the Patriarch Entities would resign as collateral manager effective March 3, 2016, and withdrew the involuntary petition against Zohar I. TPC ¶¶ 120-21, 125; *see also* Exs. L-M.

### E.     The Zohar I Foreclosure Auction

Following Zohar I's note payment default, and pursuant to its rights under the Indenture, MBIA directed the Zohar I Trustee to conduct a public auction of the Zohar I Collateral. TPC ¶ 145. Tilton and one of the Octaluna Entities sued MBIA and the Trustee to enjoin the auction. *Id.* ¶ 146. Similar to the allegations here, Tilton argued in that Auction Action that the Zohar I auction (1) was commercially unreasonable and (2) would result in the improper sale of Portfolio Company equity purportedly owned by Tilton. *Id.* After an evidentiary hearing on October 10, 2016, the Honorable Jed S. Rakoff denied Tilton's preliminary injunction motion and ordered that the Zohar I auction be implemented pursuant to procedures approved by the court. TPC ¶¶ 149, 158; Ex. N (Order, Auction Action, No. 16-cv-7128 (S.D.N.Y. Oct. 18, 2016), ECF No. 76); *see also Patriarch Partners XV, LLC v. U.S. Bank N.A.*, No. 16-cv-7128, 2017 WL 3822603 (S.D.N.Y. Aug. 28, 2017). Specifically, the court rejected Tilton's contention that the Zohar I auction was

commercially unreasonable and confirmed that Zohar I had the right to auction any and all unidentified equity assets owned by Zohar I.  TPC ¶ 158; *see also Patriarch Partners XV, LLC*, 2017 WL 3822603, at \*6.  The court's opinion did not resolve whether any particular equity assets were in fact owned by Tilton versus Zohar I.  *Id.*  The court instead confirmed that Zohar I had the authority to sell any and all Collateral assets belonging to it, and that the auction could take place under the Trustee's terms of sale.  *Id.*

In the auction, MBIA made the highest bid for all of Zohar I's Collateral, and Tilton declined to exercise her "last look" right under the Indenture to match it.  TPC ¶ 152; Ex. A (Zohar I Indenture) § 5.4(a)(v)(A). As a result, Zohar I sold all of its assets to MBIA, and MBIA is now the beneficial owner of all of the Zohar I Collateral.  TPC ¶¶ 155, 157.

### F.    Plaintiffs' Additional Prepetition Litigation With The Zohar Funds

As the Court is aware, the above-described litigations are a small subset of the parties' Zohar-related disputes.  For example, AMZM has, on behalf of the Zohar Funds. brought multiple successful litigations against the Tilton Parties in Delaware.  In April 2016, the Zohar Funds obtained a judgment against the Patriarch Managers requiring them to provide AMZM with the Funds' corporate books and records.  TPC ¶ 127; *see also Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*, No. CA-12247, 2016 WL 6248461 (Del. Ch. Oct. 26, 2016), *aff'd* 165 A.3d 2088 (Del. 2017).  AMZM also sued Tilton in Delaware seeking confirmation of (a) Zohar II's and Zohar III's ownership of equity in three Portfolio Companies and (b) those Funds' rights and powers to name those companies' directors.  TPC ¶¶ 60; *see also Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc*., No. CA-12946, 2017 WL 5956877 (Del. Ch. Nov. 30, 2017).  In November 2017, following a six day trial, the Delaware Court of Chancery ordered that Zohar II and Zohar III are the legal and beneficial owners of the disputed equity.  *See Zohar II 2005-1, Ltd.*, 2017 WL 5956877, at \*39.  The Delaware Supreme Court recently rejected Tilton's attempts to vacate that

trial opinion, and the Delaware Court of Chancery entered a Partial Final Order and Judgment finally adjudicating, in favor of the Funds and against Tilton, the very claims of equity ownership at issue here.  *See* Exs. O-P.

> G.   **The Zohar II And Zohar III Defaults And Delaware Bankruptcy Cases**

Zohar II defaulted when its notes matured in January 2017.  TPC ¶¶ 108, 133.  Upon Zohar II's note payment default, MBIA paid $770 million in claims on its Policy so that the Zohar II Class A-1, A-2, and A-3 noteholders were paid in full.  *Id.*  As a result, MBIA is subrogated to the rights of the holders of those notes and is entitled under the Indenture to reimbursement for its Policy payment before any funds can pass through the Zohar II waterfall to Tilton's interests.  Ex. B (Zohar II Indenture) § 16.5.  Zohar III likewise defaulted on its note payment obligations.

On March 11, 2018, Tilton—as the then-sole director of the Zohar Funds—caused the Zohar Funds to file the Zohar Bankruptcy Cases in Delaware.  Following motion practice and a court-ordered mediation in the Zohar Bankruptcy Cases, the Tilton Parties and the Zohar Funds' senior creditors (including MBIA) agreed to a settlement approved by the Delaware Bankruptcy Court in May 2018.  *See* Ex. Q (Settlement Agreement).  Under the Settlement Agreement, Tilton is required to work in good faith with the Debtors' fiduciaries to sell or refinance the Portfolio Companies until the parties to the Settlement Agreement agree in writing to terminate the Settlement Agreement or until MBIA and the Secured Creditors are "Paid in Full."  Ex. Q ¶¶ 10, 12.

After filing the Third-Party Complaint and entering into the Settlement Agreement, Third-Party Plaintiffs have since taken new self-serving positions in the Zohar Bankruptcy Cases that are fundamentally inconsistent with their assertions of Tilton's equity ownership in this and other litigations.  On March 21, 2020, Tilton abruptly and without prior notice to MBIA or the Zohar Funds' fiduciaries resigned her board and management positions at all but one of the Portfolio

Companies.  *See* Exs. R-S.  Critically, for purposes here, she also withdrew her prior objections to the Zohar Funds' claims of legal and beneficial ownership of the Portfolio Company equity that had previously been in dispute.  *Id.*  Specifically, the Tilton Parties represented to the Delaware Bankruptcy Court that the Debtor Zohar Funds "are now the beneficial owners of the equity recorded in their names," and that Tilton "will no longer litigate these issues."  Ex. R ¶ 2; Ex. S ¶ 4.  Tilton's about-face occurred one day after the Bankruptcy Court imposed certain sales parameters establishing a timely process for monetization of the Portfolio Companies and confirmed for the third time in seven months that Tilton must perform her obligations under the Settlement Agreement.  *See* Ex. U; *see also* Order, Zohar Bankruptcy Cases, ECF No. 974; *see also* Zohar Bankruptcy Cases, ECF No. 1389 (Hr'g Tr. (2/6/2020)) at 66-71 (confirming Court's jurisdiction to effect company sales over Tilton objection).  The Delaware Bankruptcy Court adopted Tilton's new-found position and entered an order confirming that the Zohar Funds are the beneficial owners of the Portfolio Company equity.  *See* Ex. T.

## **ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible only when the plaintiff pleads facts that lead the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts need not accept a plaintiff's legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").  Further, where a complaint's allegations are contradicted by documents integral to the complaint or otherwise properly considered on a motion to dismiss, "'the documents control

and this Court need not accept as true the allegations in [a] complaint.'" *Guo Hua Ke v. Morton*, No. Civ. 8671, 2012 WL 4715211, at *3-4 (S.D.N.Y. Sept. 30, 2012) (citation omitted).

In addition, claims for fraud and negligent misrepresentation are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b); *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 514 (S.D.N.Y. 2018). To satisfy Rule 9(b), the plaintiff must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citation omitted).

## I.   The Third-Party Complaint Rests On Conceded Claims Of Equity Ownership And Improperly Asserts Mooted Claims

The doctrine of judicial estoppel bars a party from taking a position contrary to one successfully maintained in a prior legal proceeding. *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d. 17, 31 (S.D.N.Y. 2015) (parties estopped from asserting they were trustees of a foundation after asserting otherwise in a prior proceeding). Estoppel should apply "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position . . . especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Adelphia Recovery Tr. v. HSBC Bank USA, Nat'l Ass'n (In re Adelphia Recovery Tr.)*, 634 F.3d 678, 695 (2d Cir. 2011) (citation omitted). "[T]he purpose of judicial estoppel is to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment,' it applies 'not only when a party knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action.'" *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 354 (S.D.N.Y. 2013) (quoting *In re Adelphia*, 634 F.3d at 696) (judicial estoppel does not require a determination that a party intentionally made untrue or misleading statements).

Here, judicial estoppel squarely applies to prevent the Tilton Parties from litigating both sides of Tilton's purported equity ownership. Third-Party Plaintiffs should not be permitted to seek damages based on the bogus theory that MBIA engaged in a "years-long campaign to illegally and clandestinely wrest that ownership and control [of Portfolio Company equity] away from Ms. Tilton" (TPC ¶ 84), after having successfully disavowed Tilton's obligations of such ownership and control in the Zohar Bankruptcy Cases. *See* Ex. T. The Tilton Parties' representation they would "no longer litigate" the issue of equity ownership (Ex. R ¶ 2; Ex. S ¶ 4) is fundamentally inconsistent and cannot be squared with the present pleading's allegations that Tilton was in fact the true owner of Portfolio Company equity. TPC ¶¶ 178, 186, 190, 196, 198, 215-16, 229-30, 243, 249, 259-60, 266, 269, 273, 307(c), 324, 332, 335. Permitting the Tilton Parties to maintain their position as purported equity owner for purposes of these damages claims would be particularly unfair after they strategically abandoned such ownership to escape their obligations in the Bankruptcy Court to sell the Portfolio Companies according to certain court-ordered parameters and timelines. *See* Ex. U.

At minimum, the Tilton Parties' mooted declaratory judgment claims should be dismissed. Specifically, Counts 21 and 22 seek declarations that (1) "the irrevocable proxies and LLC agreement amendments are valid and binding on the Zohar Funds" and (2) Defendants "are the ultimate and beneficial owners of the equity interests for which the Zohar Funds are the record shareholders[.]" TPC ¶¶ 329-38. These declaratory judgment claims were mooted by the Delaware Bankruptcy Court's order confirming the Zohar Funds' ownership of disputed Portfolio Company equity and terminating the irrevocable proxies and LLC agreement amendments at issue here and, accordingly, should be dismissed. *See* Ex. T ¶¶ 3-4.

**II.     The Third Party Complaint Fails To State Any Claims For Relief**

As an initial matter, the Third Party Complaint is deficient because it does not specify which of the Third-Party Plaintiffs bring which claims against the MBIA Defendants.  A well-pleaded complaint must connect *each* claimed wrong with a *particular* plaintiff.  *See Nafziger v. McDermott Int'l Inc.*, 467 F.3d 514, 516 (6th Cir. 2006) (complaint properly dismissed where, *inter alia*, "the plaintiffs' pleadings had failed to identify . . . which individual plaintiffs were asserting various causes of action against which individual defendants").  Here, the Third-Party Complaint asserts causes of action on behalf of the Tilton Parties collectively, without identifying *which* of the Third-Party Plaintiffs was purportedly harmed by MBIA's alleged conduct at issue in each claim or even which of the Tilton Parties asserts any particular cause of action.  *E.g.*, TPC ¶¶ 185, 187, 189, 193-94, 196, 199, 218, 232-35.

In addition to this pleading deficiency, the Third Party Complaint also should be dismissed in its entirety because it fails to state any claims against MBIA upon which relief can be granted.

**A.     Counts 1-3 Fail:  MBIA's Conditional Proposals Are Not Actionable**

The Third-Party Complaint alleges claims for fraud, negligent misrepresentation, and promissory estoppel based on the theory that MBIA induced the Tilton Parties to resign their positions as collateral manager of the Zohar Funds.  TPC ¶¶ 120, 181, 190, 196.  Specifically, the Third-Party Complaint alleges that MBIA represented (1) in October 2015 that Tilton would, as part of an agreed-upon workout of the Zohar Funds, "retain" her rights in the Portfolio Companies and (2) in February 2016 that MBIA would "honor" Tilton's equity rights in the Portfolio Companies following any restructuring of the Zohar Funds and resolution of the Zohar I Bankruptcy.  *Id.*  All three causes of action must be dismissed because the Third-Party Complaint fails to plead misstatements of fact, clear and unambiguous promises, reasonable reliance, or a special relationship as required under New York law. *See Bui v. Indus. Enters. of Am., Inc.*, 594 F.

Supp. 2d 364, 371 (S.D.N.Y. 2009) (reciting elements of New York fraud claim); *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (reciting elements required for negligent misrepresentation); *Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (reciting elements for promissory estoppel).

*First*, Counts 1-3 fail because the Third-Party Complaint does not allege with the requisite particularity that MBIA made a false statement of fact or a clear or unequivocal promise.  For statements or promises to be actionable under these claims, they must be "factual in nature" and either unrelated to future events or clear and unequivocal.  *Hydro*, 227 F.3d at 20; *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187-88 (2d Cir. 2004) (defendant's representation of ability to assist in future sale of asset was not actionable); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 450 (S.D.N.Y. 2006) (alleged statements regarding defendants' interest, willingness, and intentions to make future investments was not a clear and equivocal promise required to sustain promissory estoppel claim).  In other words, "[p]romises of future conduct are not actionable" unless false at the time they are made. *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987).  And ambiguous promises that leave open questions as to how they will be fulfilled cannot sustain a claim for promissory estoppel.  *See Henneberry*, 415 F. Supp. 2d at 450 (purported promise regarding intentions to provide future capital investments was not clear or unambiguous where statement did not specify when or how much capital would be provided).

Under this well-established law, none of MBIA's purported statements sustain Third-Party Plaintiffs' claims.  To the contrary, MBIA's October 2015 and February 2016 representations were non-actionable proposals expressly conditioned on the execution of written agreements never reached by the parties.  There is no dispute that MBIA's statements regarding Tilton's rights and positions at the Portfolio Companies were made during arm's-length restructuring and settlement

negotiations.  TCP ¶¶ 120-22.  MBIA's written proposals containing such statements, which are quoted and incorporated in the Third-Party Complaint, further confirm that MBIA's statements were not actionable promises or representations of fact, but instead were conditional deal points "subject to the negotiation and execution of final documentation."  Ex. G at 1; *see also* Ex. I at 3 ¶ 10 (proposed terms shall be codified in a "binding restructuring agreement" subject to "due diligence satisfactory to MBIA in its sole judgment"); Ex. K at 1-2 (proposal contingent on parties reaching a "binding agreement" as reflected in a "definitive term sheet . . . to be reached by Friday, February 5, 2016").[3]  All the other generalized references in the Complaint to purported "repeated" or "numerous" assurances or promises by MBIA regarding Tilton's alleged equity ownership or a Zohar restructuring lack the specific who, what, when, and where details required to sustain a claim of fraud or negligent misrepresentation and are too vague and ambiguous to support a promissory estoppel claim. *See, e.g.*, TPC ¶¶ 179-80, 183, 191, 196; *see also supra* at 10, 12-13.[4]

Nor does the Third-Party Complaint allege what, if anything, about MBIA's statements was false.  There is no dispute that Tilton holds equity interests in both the Funds (through the Octaluna Entities) and in certain Portfolio Companies (through the Ark Entities).  The Delaware Court of Chancery confirmed, however, that the disputed equity interests in the Portfolio Companies recorded in the name of the Zohar Funds belong to and are properly controlled by the

---

[3]  Third-Party Plaintiffs' claims also fail to the extent they rest on alleged statements made in February 2016 because the Third-Party Complaint incorrectly attributes to MBIA a quotation from the *Tilton Parties' own workout proposal* and does not identify any such statements by MBIA.  Ex. H ¶ 8 ("Patriarch or Lynn Tilton will retain their [*sic*] rights, as applicable, as equity holder of the funds and underlying portfolio companies"); *see also* TPC ¶ 120 (same).

[4]  Likewise, vague references to "sham negotiations" regarding a possible extension of the Zohar I Note Maturity Date that are squarely at issue in the Westchester Action recently remanded to state court by this Court cannot support the claims here.  *See* TPC ¶¶ 98, 184; *see also Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. 2013) (federal court should abstain from piecemeal litigation when parallel state court proceeding involves claims against same defendant based on "the exact same scheme").

Funds—not Tilton.  *See* 225 Action Opinion, 2017 WL 5956877, at *39; *see also* Exs. O-P.  MBIA cannot plausibly be charged with failing to recognize rights and interests not belonging to Tilton. In any event, as Judge Rakoff held, even if Tilton had been deemed the beneficial owner of such equity, the Zohar I auction did not deprive her of any ownership rights.  *See Patriarch Partners XV, LLC*, 2017 WL 3822603, at *6.

*Second*, the Third-Party Complaint does not plead facts supporting a rational inference that the Tilton Parties reasonably or justifiably relied on any of MBIA's purported statements.  Under New York law, reliance on a statement is not justified where the plaintiff failed to exercise proper diligence to uncover the falsehood.  *See Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1002 (N.Y. 2011) (claims rejected where sophisticated plaintiffs "'have been so lax in protecting themselves that they cannot fairly ask for the law's protection'" (citation omitted)); *see also Ventur Grp., LLC v. Finnerty*, 892 N.Y.S.2d 69, 71 (App. Div. 1st Dep't 2009) (fraud claims dismissed where sophisticated plaintiff failed to investigate representations by seller of investment firm that it would deliver clients of key employee who was not tied to firm by employment contract).  In assessing reasonable reliance, the Court must consider "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Cap. Invs. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003).  "'Whether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (citation omitted); *see also DDJ Mgmt., LLC v. Rhone Grp. LLC*, 931 N.E.2d 87 (N.Y. 2010) (dismissal affirmed for failure to plead justifiable reliance).

Here, the Tilton Parties' own representations to Judge Drain confirm that they resigned as collateral manager and dismissed the Zohar I Bankruptcy *not* in reliance on MBIA's purported

assurances, but instead because Tilton refused to accept MBIA's proposed terms for a consensual resolution. Ex. M (Tilton resigned "to avoid . . . continuing damage arising from protracted unproductive negotiations and battle"); *see also* Ex. L (same). Any actions taken by the Tilton Parties in reliance on statements made during the parties' October 2015 or February 2016 settlement negotiations would in any event have been unreasonable. MBIA stated in writing that its proposals were not binding commitments. Exs. G, I, K. It would have been absurd for the sophisticated Tilton Parties to expect MBIA to perform proposed deal terms that Tilton admittedly *rejected*. Ex. L at 1 ("[T]he parties are unable to reach a consensual resolution in these matters."); Ex. M at 2 ("Our client never agreed to develop an expedited asset disposition plan to maximize recoveries to creditors – which is what Cadwalader continues to assert."). Nor could Third-Party Plaintiffs have reasonably believed MBIA would forebear from exercising its contractual rights and remedies against Tilton absent a written agreement. After all, as of the Tilton Parties' February 2016 resignations, Tilton had already sued MBIA for fraud and promissory estoppel in connection with the Zohar I Note Maturity Date. *See* TPC ¶ 98.

     *Third*, the negligent misrepresentation claim also fails because the Tilton Parties do not, and cannot, plead facts demonstrating a special relationship with MBIA. *See JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 400-01 (S.D.N.Y. 2004) (credit agreement did not create a special relationship between lenders and defendant sufficient to support lenders' negligent misrepresentation claim); *River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*, 743 N.Y.S.2d 870, 871 (App. Div. 1st Dep't 2002) (parties lacked the "confidential or fiduciary" relationship required by negligent misrepresentation claim); *see also infra* Point II.B.

### B.     Counts 5 And 20 Fail:  MBIA Did Not Owe, Breach, Or Assist In Any Breach Of Fiduciary Duties To The Tilton Parties

According to the Third-Party Complaint, MBIA owed fiduciary duties to Tilton "just as controlling stockholders of a corporation owe fiduciary duties to minority stockholders." TPC ¶ 212.  MBIA supposedly breached these purported duties by conducting the Zohar I auction and "directing" AMZM to take certain actions.  TPC ¶¶ 215-18.  The Third-Party Complaint further claims that MBIA aided and abetted AMZM's breaches by appointing AMZM as collateral manager and encouraging and assisting in AMZM's alleged conduct.  *Id.* ¶¶ 324-25.  These causes of action fail because neither MBIA nor AMZM owed fiduciary duties to the Tilton Parties, and the Indenture expressly authorized all of MBIA's alleged conduct.

To assert a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary relationship between the parties and the knowing breach of that duty.  *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 465 (S.D.N.Y. 2009).  "[W]here [the] parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship," and no independent fiduciary duty exists unless the parties "created a relationship of higher trust than would arise from [the contract] alone."  *EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (citations omitted).

The Third-Party Complaint fails to allege facts demonstrating an actual fiduciary relationship between the Tilton Parties and either MBIA or AMZM.  The parties' relationships are defined and strictly governed by the Transaction Documents.  TPC ¶ 43; Exs. A-F.  The Indentures, in turn, make clear that MBIA owes no duties—fiduciary or otherwise—to the Tilton Parties or any other Zohar stakeholder, and they expressly exculpate MBIA from liability for its alleged conduct.  *See* Exs. A-B (Indentures) § 13.2(a) (MBIA "shall not have any obligation or duty to any

Person or to consider or take into account the interests of any Person and shall not be liable to any Person for any action taken by it or at its direction").

Third-Party Plaintiffs similarly have no legal basis to impute to MBIA the fiduciary duties that a controlling corporate stockholder owes to its minority stockholders. *See Apace Commc'ns, Ltd v. Burke*, 17 F. Supp. 3d 238, 244 (W.D.N.Y. 2014) (a creditor owes no fiduciary duty to a debtor's equity holders). Following Zohar I's and Zohar II's defaults, the Indentures authorized MBIA, as Controlling Party, to replace the collateral manager and direct the Trustee to liquidate the Collateral. Exs. A-B §§ 5.4(a), 5.5(a)(ii), 5.13; Exs. C-D § 5.5. As holders of subordinated notes and preference shares, Third-Party Plaintiffs have limited *contractual* rights to payments, and only after all outstanding principal and interest is paid to the senior creditors. Because the allegations and referenced documents demonstrate that MBIA bargained for and exercised its rights vis-à-vis the Tilton Parties on an arm's-length basis, there is no rational basis to infer a fiduciary relationship. *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735, 741 (N.Y. 2012) ("[T]here is generally 'no fiduciary obligation in a contractual arm's length relationship between a debtor and a note-holding creditor[.]'" (citation omitted)).[5]

Assuming *arguendo* that MBIA or AMZM *did* owe fiduciary duties to the Tilton Parties, MBIA cannot plausibly have breached them, or knowingly participated in such breaches by AMZM. "A fiduciary duty claim cannot lie against a party seeking to exercise its rights under

---

[5]    Third-Party Plaintiffs' attempts to impute fiduciary duties to AMZM under the Investment Advisor's Act of 1940 and common law are similarly unavailing. *SNS Bank N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (App. Div. 1st Dep't 2004) (Investment Company Act of 1940 did not create fiduciary relationship between parties with "arm's length business relationship" governed by contract). For the reasons set forth herein and the grounds set forth in AMZM's memorandum of law in support of its motion to dismiss the Third-Party Complaint, which is hereby incorporated by reference, Third-Party Plaintiffs' aiding and abetting claims against the MBIA Defendants fail. *See OFSI Fund II, LLC v. Can. Imperial Bank of Com.*, 920 N.Y.S.2d 8, 11 (App. Div. 1st Dep't 2011) (there can be no claim for aiding and abetting where there is no claim for breach of fiduciary duty); *see also* AMZM Memorandum of Law in support of Motion to Dismiss.

contract . . . ."  *Matsumura v. Benihana Nat. Corp.*, No. 06 Civ. 7609, 2010 WL 882968, at *10 (S.D.N.Y. Mar. 5, 2010) (majority stockholder's calculation of corporate acquisition purchase price did not breach shareholder agreement and thus did not breach defendant's fiduciary duties). Additionally, a claim for aiding and abetting will not survive absent facts that the defendant "knowingly induced or participated in the breach," resulting in damages.  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006). Allegations that a defendant should have known of the alleged duty and breach are insufficient to impose liability.  *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (Table), 1998 WL 406036 (2d Cir. 1998); *see also Samuel M. Feinberg Testamentary Tr. v. Carter*, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987) ("'Actual knowledge, not mere notice or unreasonable awareness, is . . . essential.'" (citation omitted)).

MBIA's directions to U.S. Bank to conduct the Zohar I auction and its appointment of and direction to AMZM to enforce certain remedies under the Indentures indisputably were authorized by the Transaction Documents and, thus, do not support the Complaint's conclusory assertions that MBIA breached, or aided and abetted breaches of, any fiduciary duties.  Judge Rakoff has already confirmed that MBIA had the contractual right to direct US Bank to conduct the Zohar I auction.  *See* Ex. A (Zohar I Indenture) § 5.4(a)(ii); *Patriarch*, 2017 WL 3822603, at *1-2.  MBIA also undisputedly had the contractual rights as "Controlling Party" to appoint a successor collateral manager of its choice upon Tilton's resignation, to "institute Proceedings for the collection of all amounts then payable on the Notes" and, additionally, "take any other appropriate action to protect and enforce the rights and remedies of the Secured parties" under the Indentures.  *See* TPC ¶ 113; *see also* Ex. A (Zohar I Indenture) §§ 5.4, 7.5; Ex. C §§ 2.2(c), 5.5.  Further, AMZM's success in the multiple litigations brought on behalf of the Zohar Funds blatantly contradicts Third-Party Plaintiffs' unsubstantiated assertions that MBIA encouraged and assisted AMZM in bringing bad-

faith "sham" lawsuits.  *See, e.g.*, *Zohar CDO 2003-1, LLC*, 2016 WL 6248461; *Zohar II 2005-1, Ltd.*, 2017 WL 5956877; *see also* AMZM Memorandum of Law in support of Motion to Dismiss.

## C.    Counts 6-10, 12-13 Fail:  The Zohar I Auction Was Authorized By Contract And Court Order And Does Not Give Rise To Any Claims

The Third-Party Complaint asserts multiple causes of action based on allegations that the Zohar I auction was improper and commercially unreasonable.  Specifically, Counts 6-9 of the Third-Party Complaint claim that MBIA breached the Indenture, the Indenture's implied covenant of good faith and fair dealing, and certain provisions of the Uniform Commercial Code on the grounds that the method, time, place, manner, and terms of the auction were not commercially reasonable.  *See* TPC ¶¶ 228-29 (Count VI), 240 (Count VII), 254 (Count VIII), 257 (Count IX). Counts 10, 12-13 claim that, through the auction, MBIA stole or unlawfully deprived Tilton of certain unidentified Portfolio Company equity, adversely impacted the value of the Tilton Parties' Zohar I notes and interests, and that MBIA was unjustly enriched.  *See* Compl. ¶¶ 260, 267, 274.

As set forth herein and in Third-Party Defendant U.S. Bank National Association's memorandum of law in support of its motion to dismiss (which brief is incorporated herein by reference), all of these claims fail because the auction undisputedly was conducted pursuant to the Zohar I Indenture and court order and did not transfer any assets belonging to the Tilton Parties.

### 1.    The Zohar I Auction was commercially reasonable.

An asset sale conducted pursuant to court order is *per se* commercially reasonable.  *See* N.Y. U.C.C. § 9-227(c)(1) (McKinney 2016 & Supp. 2020); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 677 (S.D.N.Y. 1991), *aff'd sub nom. Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992); *Sumner v. Extebank*, 452 N.Y.S.2d 873, 874-75 (App. Div. 1st Dep't 1982) (sale of collateral at below-market price was commercially reasonable and thus not actionable), *aff'd as modified*, 462 N.E.2d 704 (N.Y. 1983).  Alleged U.C.C. violations based on the same facts and

seeking similar relief to breach of contract claims also must be dismissed as duplicative. *See Beninati v. FDIC*, 55 F. Supp. 2d 141, 147 (E.D.N.Y. 1999) (claim for breach of the duty of commercial reasonableness under predecessor to U.C.C. § 9-610 "is a breach of contract claim" and dismissed).

The Third-Party Complaint's bare assertions that the Zohar I auction was a sham and commercially unreasonable need not be accepted as true and do not support the claims in Counts 6-10, 12-13. Judge Rakoff already rejected Plaintiffs' asserted grounds for commercial unreasonableness and approved the sale of Zohar I Collateral that the Tilton Parties now attack. TPC ¶¶ 149, 158; *see also* Ex. N; *Patriarch Partners*, 2017 WL 3822603 (S.D.N.Y. Aug. 28, 2017). Far from issuing an "advisory opinion," as the Third-Party Complaint contends (TPC ¶ 158), the court held that MBIA had the contractual right to direct US Bank to conduct the Zohar I auction and that the Trustee had the express authority to sell the Collateral, including the unidentified equity assets that Tilton argued could not be sold. *Patriarch Partners*, 2017 WL 3822603, at *1-2, 5. The court further held that the terms of the auction provided bidders sufficient time to evaluate the disputed equity assets, "would not dissuade potential bidders," and, thus, were not commercially unreasonable. *Id.* at *6.

### 2. The Zohar I Auction Did Not Interfere With Tilton's Property Or Unjustly Enrich MBIA

Conversion is the "'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Ins. Co. v. Hous. Auth. of El Paso, Tex.*, 660 N.E.2d 1121, 1126 (N.Y. 1995) (citation omitted). A claim for trespass to chattel requires allegations that a defendant intentionally interfered with a plaintiff's lawful possession, causing harm to the plaintiff. *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 368 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 4 (2d Cir. 2010) (summary order). "The elements of an

unjust enrichment claim are '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 500 (S.D.N.Y. 2015) (citation omitted). The Third-Party Complaint fails on each count.

As an initial matter, the Third-Party Complaint fails to state claims for conversion or trespass to chattels because it does not identify the specific equity assets over which the Tilton Parties claim ownership or demonstrate that such particular assets were transferred in the auction. The Third-Party Complaint alleges that certain of the Tilton Parties owned equity in "numerous" unidentified Portfolio Companies and that such unidentified equity assets were sold at auction. *E.g.*, TPC ¶¶ 259-60, 266-67; *see also* TPC ¶¶ 1, 67, 77, 117, 145, 157. The Third-Party Complaint, however, neither identifies the particular Portfolio Companies in which the Tilton Parties allegedly owned equity interests, nor demonstrates that the particular company shares or membership interests Tilton allegedly owned were included in the auction. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (plaintiff failed to plead facts regarding defendants' transfer of "specifically identifiable assets" sufficient for the court to draw the reasonable inference of liability for conversion (citing *Iqbal*, 129 S. Ct. at 1950)).

Counts 10, 12, and 13 also fail because the Third-Party Complaint does not and cannot allege that MBIA unjustly or without authorization interfered with the Tilton Parties' lawful possession or enjoyment of *any* Portfolio Company equity rights or interests. The Delaware Court of Chancery has adjudicated Tilton's claims of equity ownership and rejected them. *See Zohar II 2005-1, Ltd.*, 2017 WL 5956877; *see also* Ex. P. Thus, the Portfolio Company equity recorded in the name of Zohar I belonged to it, not Tilton, and the Indenture and the New York District Court expressly authorized MBIA to direct the Zohar I Trustee to sell such assets. Further, and notwithstanding the Delaware Court of Chancery's 225 Action Opinion, the court-approved

auction terms expressly limited the sale and transfer of property thereunder to assets belonging to Zohar I.  *See Patriarch Partners XV, LLC*, 2017 WL 3822603, at *6 (Judge Rakoff held that "if Zohar I had no interest in certain assets, then they would not . . . be included in the Auction").[6]

### D.     <u>Count 17 Fails:  MBIA Did Not Interfere With The AMZM CMAs</u>

As a party to the Indentures (Exs. A-B) and an express third-party beneficiary of the AMZM CMAs (Exs. E-F § 7.4), MBIA cannot be liable for enforcing its own rights and interests under those contracts.  It is well-established that "'procuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong.'"  *Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996) (citation omitted).  New York law "requires a showing of either malice on the one hand, or fraudulent or illegal means on the other" to state an interference claim against a party with an economic interest in the underlying agreement.  *Id.* at 157; *see also Neilsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 114 (S.D.N.Y. 2015) (defendant not shown to have acted with "malice or illegality necessary to give rise to tortious interference with contract").  The Third-Party Complaint fails to allege that MBIA maliciously, fraudulently, or illegally caused any breach of the AMZM CMAs.  The alleged facts and documents demonstrate instead that MBIA at all times acted pursuant to its rights as Credit Enhancer under the governing Zohar Transaction Documents and applicable law.  *See supra* at 19-20, 21, 22; *see also Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Cap., Inc.*, No. 14 Civ. 10143, 2015 WL 7730980, at *12 (S.D.N.Y. Nov. 24, 2015) (interference was not "without justification" where breaches were incidental to defendants' exercise of contractual foreclosure rights).

---

[6]   The Tilton Parties not only never demanded the return of the auctioned Zohar I equity as required to state a claim, but they also conceded such ownership. *See supra* Point I; *see also Schwartz v. Cap. Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993).

Nor does the Third-Party Complaint allege facts supporting a reasonable inference that MBIA intentionally caused AMZM's purported breaches.  There are no allegations that MBIA intentionally exposed confidential Portfolio Company information or prevented AMZM from issuing investor reports.  TPC ¶¶ 307(a)-(b).  Allegations that MBIA ensured the Zohar Collateral value "would inure to MBIA's benefit" (*id.* ¶ 307(c)) should be disregarded as vague, conclusory, and duplicative of allegations relied on for Third-Party Plaintiffs' auction and fiduciary duty claims.  *See Norte*, 2015 WL 7730980, at \*12 (claims dismissed as duplicative where the alleged conduct interfering with contract was based on same facts giving rise to other claims).  Moreover, the Third-Party Complaint does not adequately allege an underlying breach of the AMZM CMAs for the reasons set forth in AMZM's brief in support of its motion to dismiss, which is hereby incorporated by reference.  *See* AMZM Memorandum of Law in support of Motion to Dismiss.

## III.    All Claims Against MBIA Inc. Fail And Should Be Dismissed

The foregoing grounds for dismissal apply to all claims against both MBIA and MBIA Inc.  Claims against MBIA Inc. fail for the additional reason that the Third-Party Complaint is devoid of factual allegations regarding that entity.  MBIA Insurance Corp.—*not* MBIA Inc.—is the party to the Indentures and the beneficiary of the Collateral Management Agreements and AMZM CMAs.  The Third-Party Complaint does not allege that MBIA Inc. engaged in any actionable conduct, that MBIA representatives acted on behalf of MBIA Inc. when communicating with any of the Tilton Parties, or how, if at all, MBIA Inc. is liable to any of the Third-Party Plaintiffs for any of the claims.  *See DiPippo v. Cnty. of Putnam*, 17-cv-7948, 2019 WL 1004152, at \*15 (S.D.N.Y. Feb. 28, 2019) (dismissing plaintiff's claims for failing "to identify which specific defendants violated which specific rights" because such "general, conclusory, blanket claims . . . are insufficient to put each Defendant on notice about what Plaintiff's actual grievances are"); *see also Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007)

(under New York law, a corporate parent is not automatically liable for the acts of its wholly owned subsidiary).

## **CONCLUSION**

Based on the foregoing, the MBIA Defendants respectfully request that the Court grant their motion to dismiss, with prejudice, the Third Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and grant such other relief the Court may deem necessary.

Dated:  December 22, 2020
New York, New York

Respectfully submitted,

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/  Joshua P. Arnold*

Sean F. O'Shea
Michael E. Petrella
Joshua P. Arnold

200 Liberty Street
New York, NY 10281
Tel.:  (212) 504-6000
Fax:  (212) 504-6666

*Attorneys for Third-Party Defendants MBIA Inc.*
*and MBIA Insurance Corporation*